Richard O. FITZGERALD and Phyllis Fitzgerald, Plaintiffs,

v.

MALLINCKRODT, INC., a Delaware Corporation, Defendant.

Civ. A. No. 86–2598.

United States District Court, E.D. Michigan, S.D.

Dec. 22, 1987.

Arnold M. Gordon, Southfield, Mich., for plaintiffs.

Ronald A. Glaser, Detroit, Mich., for defendant.

## MEMORANDUM OPINION
## AND ORDER

SUHRHEINRICH, District Judge.

This matter is before the Court on defendant's motion for summary judgment. Pursuant to Local Rule 17(1)(2), the Court shall decide this motion without oral argument.

This suit arises out of a toxic exposure to defendant's product, Calo–Clor, suffered by plaintiff. On November 20, 1984, Richard Fitzgerald was working as a greenskeeper at Salem Hills Golf Course, a position he held for eighteen years. On this date, plaintiff was preparing to spray Calo–Clor on the greens, tees, and fairways of the golf course. Plaintiff's supervisor instructed plaintiff as to the type and amount of chemicals to be used and plaintiff was responsible for mixing the proper quantities. While attempting to pour Calo–Clor from a twenty-five pound drum onto a measuring scale, plaintiff, wearing a snowmobile suit, respirator, goggles, and rubber gloves, spilled some of the chemical on his clothes and created a large cloud of dust. Plaintiff then brushed off his clothes, washed his hands and face, and returned to work spraying the greens. Later that evening, plaintiff began to feel sick. His wife took him to the hospital where it was determined that plaintiff suffered mercury poisoning due to his exposure to Calo–Clor.

Calo–Clor is an inorganic mercury based fungicide manufactured by defendant for use in erradicating snow mold from golf course greens, tees, and fairways. In mixing Calo–Clor, plaintiff removed the chemical from a twenty-five pound drum. Affixed to this Calo–Clor drum was a warning label approved by the Environmental Protection Agency (EPA). Plaintiff admits knowledge of the warning label's existence but denies reading it. Plaintiff contends that had the warning labels been prepared differently he would not have been injured in the same manner.

Defendant has moved for summary judgment, claiming the Federal Insecticide, Fungicide and Rodenticide Act of 1982 (FIFRA), 7 U.S.C. § 136 *et seq.*, preempts plaintiffs' state common law cause of action. Before reaching the merits of defendant's motion, the Court must determine whether defendant has waived its defense of preemption by failing to raise it in the first responsive pleading.[1] Defendant raised several affirmative defenses in its answer, including failure to state a claim upon which relief may be granted and absence of proximate cause. However, assuming *arguendo* that preemption is an affirmative defense, defendant did not raise preemption until the pretrial order. In the Joint Pretrial Order dated November 9, 1987, defendant clearly indicated its intention to assert federal preemption as a defense.

■ Typically an affirmative defense is waived if not raised in defendant's responsive pleading. Fed.R.Civ.P. 8(c); *Satchell v. Dilworth*, 745 F.2d 781, 784 (2d Cir. 1984). However, when an issue is raised in a pretrial order, the affirmative defense will be preserved. *See, e.g., Expertise, Inc. v. Aetna Finance Co.*, 810 F.2d 968, 973 (10th Cir.1987) (collecting cases); *see also, Jenkins v. Carruth*, 583 F.Supp. 613, 615 (E.D.Tenn.1982), *aff'd without opinion*, 734 F.2d 14 (6th Cir.1984) (finding statute of limitations defense not waiver when raised in pretrial order, but not in answer). Because defendant did raise the defense in the joint pretrial order, the Court finds that plaintiffs are not prejudiced by the failure to raise the defense in defendant's answer. Accordingly, the Court finds the affirmative defense of preemption is not waived and the Court shall consider the merits of defendant's federal preemption defense.

1. Plaintiffs maintain, and defendant does not dispute, that preemption constitutes an affirmative defense which must be raised in accordance with Fed.R.Civ.P. 8(c). While the Court is not convinced preemption qualifies as an affirmative defense, a determination of this issue is unnecessary; for the purposes of this motion, the Court shall assume federal preemption is an affirmative defense.

In the seminal case of *Gibbons v. Ogden*, 22 U.S. (9 Wheat.) 1, 210–11, 6 L.Ed. 23 (1824), the Supreme Court ruled that the Supremacy Clause, U.S. Const. Art. VI gives Congress authority to legislate in preemption of state law.

The Supremacy Clause of Art VI of the Constitution provides Congress with the power to pre-empt state law. Pre-emption occurs when Congress, in enacting a federal statute, expresses a clear intent to pre-empt state law, *Jones v. Rath Packing Co.* 430 US 519, 51 L Ed 2d 604, 97 S Ct 1305 (1977), when there is outright or actual conflict between federal and state law, *e.g., Free v Bland*, 369 US 663, 8 L Ed 2d 180, 82 S Ct 1089 (1962), where compliance with both federal and state law is in effect physically impossible, *Florida Lime & Avocado Growers, Inc. v Paul*, 373 US 132, 10 L Ed 2d 1082, 83 S Ct 1210 (1963), where there is implicit in federal law a barrier to state regulation, *Shaw v. Delta Air Lines, Inc.* 463 US 85, 77 L Ed 2d 490, 103 S Ct 2890 (1983), where Congress has legislated comprehensively, thus occupying an entire field of regulation and leaving no room for the States to supplement federal law, *Rice v. Sante Fe Elevator Corp.* 331 US 218, 91 L Ed 1447, 67 S Ct 1146 (1947), or where the state law stands as an obstacle to the accomplishment and execution of the full objectives of Congress. *Hines v. Davidowitz*, 312 US 52, 85 L Ed 581, 61 S Ct 399 (1941). Preemption may result not only from action taken by Congress itself; a federal agency acting within the scope of its congressionally delegated authority may preempt state regulation. *Fidelity Federal Savings & Loan Assn. v. De la Cuesta*, 458 US 141, 73 L Ed 2d 664, 102 S Ct 3014 (1982); *Capital Cities Cable, Inc. v. Crisp*, 467 US 691, 81 L Ed 2d 580, 104 S Ct 2694 (1984).

*Louisiana Public Service Commission v. Federal Communications Commission*, 476 U.S. 355, 368–69, 106 S.Ct. 1890, 1898–99, 90 L.Ed.2d 369, 381–82 (1986).

It is defendant's contention that FIFRA preempts state law and, therefore, preempts all state tort remedies. "The critical question in any preemption analysis is always whether Congress intended that federal regulation supersede state law." *Id.* at 382. As Judge Brown succinctly stated, "the gist of preemption is whether Congress (expressly) did or (impliedly) meant to displace state law or state law concepts in enacting the federal law." *Palmer v. Liggett Group, Inc.*, 825 F.2d 620, 625–26 (1st Cir.1987).

Pursuant to FIFRA, Congress has enacted a comprehensive system for the registration and labeling of pesticides. Both parties agree that the EPA under FIFRA regulates the sale and labeling of Calo–Clor. FIFRA directs the EPA to register a pesticide only if the EPA determines "it will perform its intended function without unreasonable adverse effects on the environment." 7 U.S.C. § 136a(c)(5)(C). When a pesticide is registered, the manufacturer must submit its proposed label to the EPA for approval; any changes in the label must also be approved by the EPA. While typically divining whether Congress intended to preempt state law is a difficult, haphazard process, in the instant statute, Congress has expressly stated its intent to preempt any state labeling or packaging requirements different from or additional to those mandated by FIFRA. Section 136v(b) provides: "Such state shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under this subchapter."

■ Although the language of the statute appears to clearly indicate Congressional intent to preempt state labeling regulations, one court has found to the contrary. In *Ferebee v. Chevron Chemical Co.*, 736 F.2d 1529 (D.C.Cir.1984), *cert. denied*, 469 U.S. 1062, 105 S.Ct. 545, 83 L.Ed.2d 432 (1985), the Court found that the federal statute was regulatory while Maryland tort remedies were compensatory. Even though the *Ferebee* court recognized that "FIFRA does not allow states directly to impose additional labeling requirements," the court allowed state tort remedies. *Id.* at 1541. The court reasoned:

The verdict itself [compensating plaintiff for injuries resulting from a defective label] does not command Chevron to alter its label—the verdict merely tells Chevron that, if it chooses to continue selling paraquat in Maryland, it may have to compensate for some of the resulting injuries. That may in some sense impose a burden on the sale of paraquat in Maryland, but it is not equivalent to a direct regulatory command that Chevron change its label. Chevron can comply with both federal and state law by continuing to use the EPA-approved label and by simultaneously paying damages to successful tort plaintiffs such as Mr. Ferebee.

*Id.*

This reasoning was rejected in *Palmer*, a case involving cigarette warnings:

The preemption clause of the Act expressly prohibits "state law" not merely "statutory law" from imposing any "requirement or prohibition" different from the Act's warning label. 15 U.S.C. § 1334. *If a manufacturer's warning that complies with the Act is found inadequate under a state tort theory, the damages awarded and verdict rendered against it can be viewed as state regulation: the decision effectively compels the manufacturer to alter its warning to conform to different state law requirements as "promulgated" by a jury's findings....* This challenge to the federal warning label's sufficiency—and the confusion it would engender—surely contravenes the Act's policy of uniform labeling.

The District Court held that an award of damages "would have only an indirect effect on defendant's labeling and advertising practices." 633 F.Supp. at 1177. The Palmers disingenuously maintain that any monetary damages awarded would not compel a manufacturer to change its label for, after all, "the choice of how to react is left to the manufacturer." This "choice of reaction" seems akin to the free choice of coming up for air after being underwater. *Once a jury has found a label inadequate under state law, and the manufacturer liable for damages for negligently employing it, it is unthinkable that any manufacturer would not immediately take steps to minimize its exposure to continued liability. The most obvious change it can take, of course, is to change its label.* Effecting such a change in the manufacturer's behavior and imposing such additional warning requirements is the very action preempted by § 1334 of the Act. Indeed, *it arrogates to a single jury the regulatory power explicitly denied to all fifty states' legislative bodies.*

825 F.2d at 627–28 (emphasis added).

While the Court has carefully considered the decision of the District of Columbia Circuit, this Court is not required to follow the decision of another circuit. *United States v. Finazzo*, 429 F.Supp. 803, 807 (E.D.Mich.1977); *see also Colby v. J.C. Penney Co., Inc.*, 811 F.2d 1119, 1123–24 (7th Cir.1987); *Generali v. D'Amico*, 766 F.2d 485, 489 (11th Cir.1985). After careful consideration of the conflicting analyses of *Ferebee* and *Palmer*, the Court finds the reasoning of *Palmer* persuasive. Where the federal government has preempted any state regulation, there can be no recovery in tort. Allowing recovery under state tort law where Congress has preempted state law would effectively authorize the state to do through the back door exactly what it cannot through the front. FIFRA expressly provides that no state may impose *"any* requirement for labeling or packaging *in addition to or different from* those required under this Act." 7 U.S.C. § 136v(b) (emphasis added). As the *Palmer* court noted, any state law tort recovery based on a failure to warn theory, would abrogate Congress' intent to provide uniform regulations governing the labeling of pesticides. *See also Hurley v. Lederle Laboratories*, 651 F.Supp. 993, 999–1000 (E.D.Tex.1986) (finding the Federal Pure Food, Drug and Cosmetic Act's regulation of labeling preempts any state tort claims based on improper warning).

Thus, where plaintiffs' claims all involve state law claims based on negligent labeling and failure to warn and where the

Court has found state regulation in this area preempted by federal law, the Court shall grant defendant's motion for summary judgment.

Accordingly,

IT IS HEREBY ORDERED that defendant's motion for summary judgment is GRANTED.