**Elyse M. ROBERTS, Plaintiff,**

v.

**DOW CHEMICAL COMPANY, Defendant.**

**No. 88 C 584.**

United States District Court, N.D. Illinois, E.D.

Dec. 9, 1988.

Matthew W. Cockrell, Theresa M. Donnewald, Rivkin, Radler, Dunne & Bayh, Chicago, Ill., Joseph Ortego, Stanley Pierce, Kevin McElroy, Rivkin, Radler, Dunne & Bayh, Uniondale, N.Y., for defendant.

Michael D. Block, Block, Krockney, Cernugel & Cowgill, P.C., Joliet, Ill., for plaintiff.

## MEMORANDUM OPINION AND ORDER

ROVNER, District Judge.

### I. INTRODUCTION

Plaintiff Elyse M. Roberts ("Roberts") contends that the inside of her house was treated [1] with DURSBAN L.O.[2] on August 29, 1984, to eradicate fleas. According to Roberts, she was not present at the time of the treatment,[3] although she was exposed to DURSBAN L.O. when she returned home. Roberts claims, that as a result of this treatment she has sustained personal injuries including "resulting chemical hypersentivities."

The Second Amended Complaint contains two counts against Dow Chemical Company ("Dow"), the manufacturer of DURSBAN L.O.[4] Count Two alleges that Dow was negligent in that it: (1) failed to warn Roberts of the effect of DURSBAN L.O. or its fumes on human health; (2) failed to warn or instruct pesticide companies as to its proper application; and (3) failed to warn or instruct these pesticide companies as to the proper warnings to be given to consumers. Count Four alleges that DURSBAN L.O. was inherently and unrea-

---

1. Defendant Mid–Central Pest Control applied the DURSBAN L.O. to plaintiff's house. Mid–Central was dismissed from this case.

2. Trademark of Dow Chemical Company.

3. Roberts contends that "certain individuals contracted with Mid–Central for the benefit of plaintiff, and without plaintiff's knowledge, to have said defendant apply said chemical to her

residence...." Second Amended Complaint ("complaint") at 2. Those individuals are not parties to this lawsuit.

4. Counts Two and Four are the only counts against Dow. Those counts also name Speer Products, Inc., who allegedly distributed DURSBAN L.O.

sonably dangerous for its intended use. Roberts claims, *inter alia*, that DURSBAN L.O. was unreasonably dangerous because: (1) an excessive quantity or improperly diluted amount was used; (2) it contained inadequate warnings or instructions; (3) it caused harmful emissions; and (4) applicators were not properly instructed on application.

Dow registered DURSBAN L.O. with the Environmental Protection Agency ("EPA") on January 4, 1982, pursuant to the labeling and packaging requirements set forth in the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), 7 U.S.C. § 136, et seq. The EPA approved DURSBAN L.O. for interior residential treatment of fleas. As part of the registration approval process, the EPA approved Dow's initial and subsequent labels for DURSBAN L.O. The label in effect at the time the Roberts' home was treated was approved by the EPA on December 15, 1983.

Pending before the Court is Dow's motion for summary judgment. Dow contends that Section 136v(b) of FIFRA specifically pre-empts the states from regulating or promulgating labeling requirements for pesticides which are in addition to or different from EPA-approved labels. According to Dow, Section 136v(b) therefore pre-empts state law tort recovery based on a failure to warn theory. For the reasons discussed below, the motion for summary judgment is denied because Congress has not pre-empted state law tort recovery. Moreover, questions of material fact still remain to be resolved by the trier of fact.

## II. DISCUSSION

The doctrine of pre-emption is derived from the Supremacy Clause of the United States Constitution. Congress may pre-empt state law either through express language or by implication. *Palmer v. Liggett Group, Inc.*, 825 F.2d 620, 625–26 (1st Cir.1987). Pre-emption can occur in a number of ways:

> Pre-emption occurs when Congress, in enacting a federal statute, expresses a clear intent to pre-empt state law, when there is outright or actual conflict be-

tween state and federal law, where compliance with both federal and state law is in effect physically impossible, where there is implicit in federal law a barrier to state regulation, where Congress has legislated comprehensively, thus occupying an entire field of regulation and leaving no room for the States to supplement federal law, or where the state law stands as an obstacle to the accomplishment and execution of the full objectives of Congress.

. . . .

> The critical question in any pre-emption analysis is always whether Congress intended that federal regulation supercede state law.

*Louisiana Public Service Commission v. Federal Communications Commission*, 476 U.S. 355, 106 S.Ct. 1890, 1898–99, 90 L.Ed.2d 369 (1986) (citations omitted). *See also Boyle v. United Technologies Corp.*, —— U.S. ——, 108 S.Ct. 2510, 101 L.Ed.2d 442 (1988); *Silkwood v. Kerr–McGee Corp.*, 464 U.S. 238, 249, 104 S.Ct. 615, 621, 78 L.Ed.2d 443 (1984). There is, however, a presumption that "Congress did not intend to displace state law." *Maryland v. Louisiana*, 451 U.S. 725, 746, 101 S.Ct. 2114, 2129, 68 L.Ed.2d 576 (1981) (citation omitted).

Pre-emption analysis is largely a matter of statutory construction. The statute in question, FIFRA, requires the registration of all pesticides distributed for sale in the United States. 7 U.S.C. § 136a. "The basic purpose of the statute [is] to regulate the labelling of such products to provide purchasers with assurance of effectiveness and safety when used in compliance with the manufacturer's instructions." *Continental Chemiste Corp. v. Ruckelshaus*, 461 F.2d 331, 335 (7th Cir.1972). FIFRA gives states authority in certain matters. 7 U.S.C. § 136v provides in part:

> (a) A State may regulate the sale or use of any federally registered pesticide or device in the State, but only if and to the extent the regulation does not permit any sale or use prohibited by this subchapter.

(b) Such State shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under this subchapter.

■ FIFRA contemplates a regulatory role for the states in the area of pesticide use. The issue is whether Roberts' claim, based on Dow's alleged failure to warn, falls within the range of permissible state regulation, or whether her claim conflicts with FIFRA's prohibition against state packaging and labeling requirements. *See Villari v. Terminix Intern., Inc.,* 692 F.Supp. 568, 577 (E.D.Pa.1988).

The case law on this issue is very limited. Dow relies on a recent district court decision, *Fitzgerald v. Mallinckrodt,* 681 F.Supp. 404 (E.D.Mich.1987), to support its position that FIFRA pre-empts state law tort remedies. The plaintiff relies on *Ferebee v. Chevron Chemical Co.,* 736 F.2d 1529 (D.C.Cir.) *cert. denied,* 469 U.S. 1062, 105 S.Ct. 545, 83 L.Ed.2d 432 (1984), in which the District of Columbia Court of Appeals held that FIFRA does not pre-empt state tort suits based on the inadequacy of an EPA-approved label. The Seventh Circuit has not yet addressed this issue. After reviewing all of the case law on this issue, the Court is persuaded that the analysis in *Ferebee* is correct and will follow that well-reasoned opinion.

In *Ferebee,* suit was brought by an agricultural worker who died from pulmonary fibrosis contracted from a long-term skin exposure to paraquat. A jury returned a verdict against Chevron, the manufacturer of the paraquat. The verdict "was based on the theory that Chevron's failure to label paraquat in a manner which adequately warned that long-term skin exposure to paraquat could cause serious lung disease made Chevron strictly liable for Ferebee's injuries." 736 F.2d at 1532.

The court found that Section 136v(b) did not explicitly pre-empt state tort recovery. It reasoned that "while FIFRA does not allow states directly to impose additional labelling requirements, the Act clearly allows states to impose more stringent constraints on the *use* of EPA-approved pesticides than those imposed by the EPA...." 736 F.2d at 1541 (emphasis in original). Therefore, "if a state chooses to restrict pesticide use by requiring that the manufacturer compensate for all injuries or for some of these injuries resulting from *use* of a pesticide, federal law stands as no barrier." *Id.* (emphasis in original).

In addressing the problem of possible implied pre-emption, the court started with the assumption that congressional intent to pre-empt requires a "clear and manifest purpose of Congress." 736 F.2d at 1542 (quoting *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947)). The *Ferebee* court then observed that state damage actions are not an obstacle to the accomplishment of FIFRA's objectives:

Such a conflict would only exist if FIFRA were viewed not as a regulatory statute aimed at protecting citizens from the hazards of modern pesticides, but rather as an affirmative subsidization of the pesticide industry that commanded states to accept the use of EPA-registered pesticides. That interpretation of FIFRA, however, is precluded by both the explicit savings clause ... and by the entire legislative history of the Act. Of equal importance, federal legislation has traditionally occupied a limited role as the *floor* of safe conduct; before transforming such legislation into a *ceiling* on the ability of states to protect their citizens, and thereby radically adjusting the historic federal-state balance, courts should wait for a clear statement of congressional intent to work such an alteration. The Supreme Court has often counselled such hesitance.

736 F.2d at 1542–43 (citations omitted) (emphasis in original). *C.f. National Agr. Chemicals Ass'n v. Rominger,* 500 F.Supp. 465, 469 (E.D.Ca.1980) (FIFRA does not pre-empt state's power to require manufacturer and/or distributor to supply data additional to that required by EPA).

The *Ferebee* court also stated that it was not physically impossible for Chevron to comply with both state and federal law. Chevron could pay damages and continue

to use the label required by FIFRA. In addition, Chevron could petition the EPA for a change in the content of their labels.[5]

The lawsuit in *Fitzgerald v. Mallinckrodt, Inc.*, 681 F.Supp. 404 (E.D.Mich.1987) arose out of plaintiff's toxic exposure to defendant's product, Calo–Clor. Affixed to the drum of Calo–Clor was a warning label approved by the EPA. 681 F.Supp. at 405. Plaintiff's state law claims were all based on negligent labeling and failure to warn. Defendant moved for summary judgment, claiming that FIFRA pre-empted plaintiff's state common law cause of action. The court granted the motion, holding that plaintiff's claims were pre-empted by FIFRA. 681 F.Supp. at 407–08.

The district court considered the *Ferebee* court's analysis, but instead relied on the reasoning in *Palmer v. Liggett Group, Inc.*, 825 F.2d 620 (1st Cir.1987). *Palmer*, however, is clearly inapplicable to the facts in *Fitzgerald* and the facts in this case. *Palmer* involved a suit brought against cigarette manufacturers and distributors for failing to provide adequate warnings about the harmful effects of cigarettes. The issue was whether the Federal Cigarette Labeling and Advertising Act ("Cigarette Act") pre-empted the Palmers' smoking and health related claims that challenged the adequacy of the federal warning on cigarette packages and the propriety of Liggett's advertising and promotion of cigarettes. 825 F.2d at 621. The *Palmer* court carefully analyzed the act in question, focusing on the fact that the statute "prescribes the exact label of warning to be placed on each package of cigarettes." 825 F.2d at 623. The court specifically distinguished the Cigarette Act from FIFRA:

The very fact that Congress mandated the precise wording required in a label, rather than merely establish the "minimum requirements" standard often found in labeling acts distinguishes the [Cigarette] Act from cases relied upon by the court and the Palmers as persuasive authority. *See, e.g., Ferebee v. Chevron Chemical Co.*, 736 F.2d 1529 (D.C.Cir. 1984) (involving FIFRA minimum labeling standards)....

. . . .

*FIFRA, which applies to some 40,000 different herbicides and pesticide formulations, imposes an entirely different type of regulatory scheme from that established under the [Cigarette] Act.* Under FIFRA, each manufacturer drafts a warning label for each product for EPA approval.... *Furthermore, the statute in Ferebee permits "states to impose more stringent constraints on the use of EPA-approved pesticides than those imposed by the EPA," indicating that Congress was indifferent to regulation of these products through state tort law.* In contrast, the [Cigarette] Act explicitly (i) applies to cigarettes only; (ii) mandates the precise language of the label; and (iii) prohibits any state from regulating any aspect of cigarette warnings. The analogy to *Ferebee* must fail.

825 F.2d at 623, note 5, and 628–29, note 13 (emphasis added) (citations omitted).

As is evident from reviewing the analysis in *Palmer*, the *Fitzgerald* court's reliance on *Palmer* was misplaced. Under preemption analysis it is critical to look at the language of the statute in question. The Cigarette Act may pre-empt state common

5. The *Ferebee* court explained:

Maryland can be conceived of as having decided that, if it must abide by EPA's determination that a label is adequate, Maryland will nonetheless require manufacturers to bear the risk of any injuries that could have been prevented had Maryland been allowed to require a more detailed label or had Chevron persuaded EPA that a more comprehensive label was needed. The verdict itself [compensating Ferebee for injuries] does not command Chevron to alter its label-the verdict merely tells Chevron that, if it chooses to continue selling paraquat in Maryland, it may have to compensate for some of the resulting injuries. That may in some sense impose a burden on the sale of paraquat in Maryland, but it is not the equivalent to a direct regulatory command that Chevron change its label. Chevron can comply with both federal and state law by continuing to use the EPA-approved label and by simultaneously paying damages to successful plaintiffs such as Mr. Ferebee. 736 F.2d at 1541.

law tort remedies; however, the reasons that the Cigarette Act pre-empts state law do not apply to FIFRA. The *Fitzgerald* court's holding relies entirely on the analysis in *Palmer*. Therefore, due to the important distinctions between the Cigarette Act and FIFRA, the Court does not find the reasoning in *Fitzgerald* to be persuasive.

Dow also argues that state court remedies are pre-empted by implication due to Congressional intent to occupy this area entirely. As discussed above, states have the power to regulate the use of pesticides under section 136v(a). *See Maryland Pest Control v. Montgomery County*, 646 F.Supp. 109, 111 (D.Md.1986). Although the legislative history in this area is somewhat limited, the Senate Report specifically states that "[g]enerally, the intent of this provision [section 23 of FIFRA which specifies the authorities retained by the state] is to leave to the states the authority to impose stricter regulation on pesticides use than that required under the Act." SEN. REP. No. 838, 92nd Cong., 2d Sess. 30 (1982), *reprinted in* 1972 U.S.CODE CONG. & ADMIN.NEWS 4021. Therefore, it appears that FIFRA regulations are not so comprehensive as to occupy the entire field. *See Wilson v. Chevron*, No. 83 Civ. 762, slip op. at 11–15 (S.D.N.Y. December 17, 1986) [1986 WL 14925] (Keenan, J.) (FIFRA does not pre-empt punitive damages awards). *See also National Agr. Chemicals Ass'n v. Rominger*, 500 F.Supp. 465, 476–71 (E.D.Ca.1980).

Finally, Dow contends that Comment k to the Restatement (Second) of Torts Sec. 402A "provides that a defendant is not strictly liable for a product like DURSBAN L.O., which may be unavoidably unsafe by its very chemical composition, if it is properly labeled—a conclusion already reached by the EPA and an issue expressly pre-empted by FIFRA." Defendant's motion at 5. However, as correctly explained by the *Ferebee* court, the EPA's conclusion that a pesticide's label meets

FIFRA requirements "does not compel a jury to find that the label is also adequate for *purposes of state tort law as well.* The purposes of FIFRA and state tort law may be quite distinct." 736 F.2d at 1540 (emphasis in original). FIFRA attempts to ensure, based on a cost-benefit analysis, that DURSBAN L.O., as labeled, does not "generally cause unreasonable adverse effects on the environment." 7 U.S.C. Sec. 136a(c)(5)(D).[6] "State tort law, in contrast, may have broader compensatory goals; conceivably, a label may be inadequate under state law if that label, while sufficient under a cost-benefit standard, nonetheless fails to warn against any significant risk." 736 F.2d at 1540. Accordingly, this Court concludes that the adequacy of the warnings on the label is a question of fact to be determined by the jury.

### III. CONCLUSION

For the reasons set forth above, Dow's motion for summary judgment is denied.

---

**6.** The "environment" is defined to include "all plants and man and other animals." 7 U.S.C. Sec. 136(j).