**ARKANSAS PLATTE & GULF PARTNERSHIP, Plaintiff,**

v.

**VAN WATERS & ROGERS INC., et al., Defendants.**

**Civ. A. No. 89 S 1726.**

United States District Court, D. Colorado.

Oct. 22, 1990.

Richard R. Young, Susan B. Prose, Holme, Roberts & Owen, Colorado Springs, Colo., for plaintiff.

Paul F. Hultin, Dean R. Massey, Parcel, Mauro, Hultin & Spaanstra, P.C., C. Michael Montgomery, Peter S. Dusbabek, Montgomery, Green, Jarvis, Kolodny & Markusson, Denver, Colo., for defendants.

## ORDER

SPARR, District Judge.

THIS MATTER comes before the Court on Defendant Dow Chemical's motion for summary judgment, filed January 31, 1990. Oral argument on the motion was heard August 13, 1990.

### PROCEDURAL BACKGROUND

Defendant Dow Chemical[1] bases its brief in support of summary judgment on three contentions: (1) the alleged failure to warn on the part of Defendant Dow, if any, did not cause plaintiff's damages as a matter of law; (2) Plaintiff lacks standing to bring an action for the property damages it seeks; and (3) Plaintiff's state law tort claims are preempted by federal law and accordingly are barred. At the hearing of Defendant's motion, the first argument was withdrawn, as the Defendant conceded that the causality question was factual in nature. At that time, the Court also denied the second argument, determining that the standing issue concerned assignment, which was an issue of fact. Having determined that summary judgment was improper on the Defendant's first two arguments, the Court took under advisement the third argument, concerning application of the preemption doctrine. This order will address exclusively the preemption argument.

Defendant Dow Chemical (hereafter "Dow") alleges that the statutory scheme of the Federal Insecticide, Fungicide and Rodenticide Act ("FIFRA") found at 7 U.S.C. § 136 et seq., preempts the Plaintiff's cause of action cognizable under state tort law arising from an alleged failure to warn due to the inadequacy of the labeling of the chemical "Dowicide 7."[2]

### FACTUAL BACKGROUND

It is undisputed that, during the years 1960–1972, Plaintiff's predecessors operated a wooden fence post treatment facility on their ranch property. The posts were soaked in a pentachlorophenol solution which greatly increased the durability of the posts. The chemical used in the procedure is more commonly referred to as "penta." Defendant's product "Dowicide 7" is a form of penta.

Plaintiff instituted this lawsuit claiming that the penta which was spilled or otherwise came into contact with the property caused the ranch to become a contaminated site. In their complaint, Plaintiff makes a negligent failure to warn claim, alleging that, among other things, the Defendants failed to provide any warning to the owners (of the property) of the potential environmental risks or hazards to the property which might result from such use.

---

**1.** Defendant Van Waters & Rogers has joined in the relevant pleadings by Dow Chemical in support of its motion for summary judgment.

**2.** With regard to the Plaintiff's strict liability claim, the Defendant, relying on the decision of *Kennan v. Dow Chemical,* 717 F.Supp. 799 (M.D. Fla.1989) makes no claim of preemption.

Plaintiff commenced the suit after it discovered penta contamination after the soil was tested. The soil tests were undertaken after the notification of the Plaintiff by one if its employees, Edward Seger, that he had been diagnosed as having penta poisoning. The Plaintiff's cause of action, however, does not concern Seger's personal injury.

Before this Court undertakes any analysis of the preemption question as it relates to FIFRA, and in particular the negligent failure to warn claim, it must be noted that there are several courts which have already considered this very question, and many more that have dealt with other questions regarding preemption. These cases will be noted and, where appropriate, discussed.

The wealth of case law on this issue is somewhat puzzling. The cases provide almost an even split of authority. There are some threads of consistency in determining some of these preemption questions. This Court will attempt to undertake an analysis which is not necessarily outcome determinative.

## THE PLEADINGS

Defendant Dow Chemical filed its motion for summary judgment on January 31, 1990. Dow relies on two arguments in its preemption argument: (1) FIFRA preempts Plaintiff's negligence claim due to its comprehensive regulation of pesticides (focusing on the FIFRA provision found at 7 U.S.C. § 136v(b), entitled "uniformity," under the heading of 136v for "Authority of States." That provision states: "such State shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under this Act."); and (2) Plaintiff's tort claim based on the inadequacy of the label must fail as FIFRA prohibits any state regulation of the area of labeling, and any recovery under state law would, in effect, amount to prohibited regulation. Dow relies heavily on the preemption analysis of *Kennan,* 717 F.Supp. 799 and *Fitzgerald v. Mallinckrodt,* 681 F.Supp. 404 (E.D.Mich.1987).

Plaintiff's opposition was filed March 9, 1990. Plaintiff argued that there was no preemption of its negligence claim, relying on *Ferebee v. Chevron Chemical Co.,* 736 F.2d 1529 (D.C.Cir.) *cert. denied* 469 U.S. 1062, 105 S.Ct. 545, 83 L.Ed.2d 432 (1984) rejected Dow's arguments that EPA approval of a manufacturer's claim did not compel a jury to find the same, and distinguishing the different, but not competitive, goals of FIFRA and state tort law. Plaintiff maintained that the requirement of EPA approval of label does not prevent state from furthering traditional tort goals. Plaintiff cites to several cases which have adopted the *Ferebee* reasoning, or cited it with approval. (Including several federal as well as state cases.) Plaintiff also argues that since the FIFRA was extensively revised by Congress in 1988, after the *Ferebee* decision, and no effort was made to statutorily overrule the decision, it can be presumed that Congress has adopted that interpretation of FIFRA. Plaintiff criticizes also the *Fitzgerald* case for its reliance on *Palmer v. Liggett Group,* 825 F.2d 620 (1st Cir.1987), a case concerning the Cigarette Act. Plaintiff undertakes a rudimentary preemption analysis, and urges the Court to align itself with those decisions finding no preemption.

At oral argument of the motion before this Court on August 13, 1990, the Plaintiff raised an additional argument, to which Dow has responded, which urges the Court to apply pre–1972 law to Plaintiff's claims. This argument was effectively raised at the time of the hearing[3] and Dow filed its supplemental response on August 17, 1990. The Court will not concern itself with any analysis of pre–1972 FIFRA law and the status of Plaintiff's tort claims under such provisions. Plaintiff's arguments are unavailing and would only provide unnecessary confusion to the already muddy waters of preemption doctrine analysis. Because it appears that some of Plaintiff's claims may not have existed under pre–1972 FIFRA analysis, and the fact that the Court is bound to apply the law in effect at the time it renders its decision, unless there would

**3.** The argument was first raised by Plaintiff in a pleading filed (Friday) August 10, 1990 at 4:55 p.m. The oral argument was held the morning of August 13, 1990.

result a manifest injustice, *Bradley v. Richmond School Board,* 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974), this order will not consider the pre–1972 FIFRA argument.

## PREEMPTION DOCTRINE ANALYSIS

■ At the outset it must be noted that the Court properly considers a number of factors when undertaking a preemption analysis of statutory language or common law on either the federal or state level. The court must consider the relationship between the state and federal laws as they are interpreted and applied, not merely as they are written. *Jones v. Rath Packing,* 430 U.S. 519, 526, 97 S.Ct. 1305, 1310, 51 L.Ed.2d 604 (1977).

The burden of proving preemption is on the movant. Dow must show that Congress intended to preclude state tort damage awards when it promulgated 7 U.S.C. § 136v(b) or as reflected in the FIFRA statute as a whole. The question is more accurately directed not towards whether Congress expressly allowed such damage awards, but rather, since tort damage awards have long been a part of traditional state tort law, to the question of whether Congress expressly supplanted them. Without an express preclusion of such awards, it must be assumed that such tort law principles would apply with full force and effect. *Silkwood v. Kerr–McGee Corp.,* 464 U.S. 238, 255, 104 S.Ct. 615, 625, 78 L.Ed.2d 443 (1984).[4] Dow must overcome this burden.

### 1. The Historical Underpinnings of the Preemption Doctrine

The Supremacy Clause of Article VI, clause 2 of the United States Constitution provides: "[t]he Constitution, and the Laws of the United States which shall be made in Pursuance thereof ... shall be the supreme Law of the Land...." U.S. Const., Art. VI, cl. 2. It is a familiar and well-established principle that the Supremacy Clause ... invalidates state laws that "interfere with, or are contrary to," federal law. *Hillsborough County, Fla. v. Auto-*

*mated Medical Labs.,* 471 U.S. 707, 713, 105 S.Ct. 2371, 2375, 85 L.Ed.2d 714 (1985), *citing Gibbons v. Ogden,* 22 U.S. (9 Wheat.) 1, 6 L.Ed. 23 (1824).

■ The preemption clause may apply to federal common law as well as state statutory or common law. Justice Rehnquist noted this distinction in *Milwaukee v. Illinois,* 451 U.S. 304, 101 S.Ct. 1784, 68 L.Ed.2d 114 (1981):

[T]he appropriate analysis in determining if federal statutory law governs a question previously the subject of federal common law is not the same as that employed in deciding if federal law preempts state law. In considering the latter question 'we start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.' (Quoting *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230 [67 S.Ct. 1146, 1152, 91 L.Ed. 1447] (1947).)

The Supreme Court has articulated in *Louisiana Public Service Comm'n v. Federal Communications Comm'n,* 476 U.S. 355, 106 S.Ct. 1890, 90 L.Ed.2d 369 (1986) an oft-cited listing of factors for preemption analysis, which has served to be instructive to many courts, but nonetheless offers little help in providing any practical means of analysis or "test" for trial courts:

The Supremacy Clause of Article VI of the Constitution provides Congress with the power to pre-empt state law. Preemption occurs when Congress, in enacting a federal statute, expresses a clear intent to pre-empt state law, *Jones v. Rath Packing Co.,* 430 U.S. 519 [97 S.Ct. 1305, 51 L.Ed.2d 604] (1977), when there is outright or actual conflict between federal and state law, *e.g., Free v. Bland,* 369 U.S. 663 [82 S.Ct. 1089, 8 L.Ed.2d 180] (1962), where compliance with both federal and state law is in effect physically impossible, *Florida Lime & Avocado Growers, Inc. v. Paul,* 373 U.S. 132 [83 S.Ct. 1210, 10 L.Ed.2d 248] (1963).

---

**4.** Is should be noted here, however, as the court in *Palmer v. Liggett Group, Inc.,* 825 F.2d at 628, pointed out, the *Silkwood* case involved the

Atomic Energy Act of 1954, 42 U.S.C. § 2011 *et seq.,* which contained no preemption provision.

Where there is implicit in federal law a barrier to state regulation, *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85 [103 S.Ct. 2890, 77 L.Ed.2d 490] (1983), where Congress has legislated comprehensively, thus occupying an entire field of regulation and leaving no room for the States to supplement federal law, *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218 [67 S.Ct. 1146, 91 L.Ed. 1447] (1947) or where the state law stands as an obstacle to the accomplishment and execution of the full objectives of Congress. *Hines v. Davidowitz,* 312 U.S. 52 [61 S.Ct. 399, 85 L.Ed. 581] (1941).

See *Palmer v. Liggett Group, Inc.,* 825 F.2d at 624–625.

### 2. The Various Levels of Preemption Analysis

As evidenced by the listing of factors above in *Louisiana Public Service,* the court may consider any number of factors in its preemption analysis. This seems to be part of the problem and may lie at the source of the widely divergent decisions concerning application of preemption analysis. It is apparent that these factors, which were not intended to be an exhaustive treatment of the matter, must be tailored to the particular statute and regulatory scheme promulgated by Congress with a view to determining how the state law (as distinguished from the federal common law) or regulation may affect the federal provisions. In view of the cases on the subject, it is apparent that the only workable "test" is one which considers the statutory language, the entire statute, and its legislative history if necessary, in light of its relationship to the state common law provisions.

### 3. The Test

#### A. Express Preemption

■■■ Express preemption arises only in certain limited circumstances. Statutes which expressly supersede state law are not common. To determine whether there is express preemption, the court must consult the statute. *Louisiana Public Service,* 476 U.S. at 368, 106 S.Ct. at 1898. With regard to a finding that no express preemption exists, it is not necessary for a federal statute to provide explicitly that particular state laws are preempted. *International Paper Co. v. Ouellette,* 479 U.S. 481, 107 S.Ct. 805, 93 L.Ed.2d 883 (1987) citing *Hillsborough County,* 471 U.S. 707, 105 S.Ct. 2371, 85 L.Ed.2d 714.

#### (1) Examination of Statutory Provisions

■■■ Although inquiry into legislative motive is often an unsatisfactory venture, *United States v. O'Brien,* 391 U.S. 367, 383, 88 S.Ct. 1673, 1683, 20 L.Ed.2d 672 (1968), it nonetheless may be necessary to the determination of the controversy before the court. All provisions in a statute should be given effect. *See, U.S. v. Menasche,* 348 U.S. 528, 538–539, 75 S.Ct. 513, 519–520, 99 L.Ed. 615 (1955). If express preemption is not found by the language of the statute,[5] then the next level of analysis concerns implied preemption. The difficulties of consistent preemption analysis generally begin with implied preemption, as the several factors of that analysis allow the courts a great amount of discretion to determine whether Congress impliedly preempted state laws or regulations. As the First Circuit noted in *Palmer,* the gist of preemption is whether Congress (expressly) did or (impliedly) meant to displace state law or state law concepts in enacting the federal law. *Palmer,* 825 F.2d at 625–626.

#### B. Implied Preemption

Implied preemption presents questions which are completely different from the more superficial analysis required in express preemption. The broader issue here arises from the very fact that Congress acted. The court must look at the consequences of that action. The Supreme

---

**5.** One court addressing the FIFRA statute in a preemption context, did find there was express preemption of the plaintiff's claim based on negligent labeling and failure to warn based on the statutory provision of 7 U.S.C. § 136v(b). *Fitzgerald v. Mallinckrodt,* 681 F.Supp. at 407. To this Court's knowledge, the *Fitzgerald* court is the only court to have found such language to expressly preempt such a claim under FIFRA.

Court noted recently in *English v. General Electric Co.*, — U.S. —, 110 S.Ct. 2270, 2279, 110 L.Ed.2d 65 (1990):

> Ordinarily, the mere existence of a federal regulatory or enforcement scheme ... does not by itself imply preemption of state remedies. The Court has observed: 'Undoubtedly, every subject that merits congressional legislation is, by definition, a subject of national concern. That cannot mean, however, that every federal statute ousts all related state law....Instead, we must look for pre-emption.'

(Citing *Hillsborough County*, 471 U.S. at 719, 105 S.Ct. at 2378.)

On the other hand, it must be noted that "it is not necessary for a federal statute to provide explicitly that particular state laws are preempted." *Ouellette*, 479 U.S. at 491, 107 S.Ct. at 811, citing *Hillsborough County*, 471 U.S. at 713, 105 S.Ct. at 2375.

The more difficult questions begin here: did Congress impliedly preempt the awarding of state tort law damages by a jury when it promulgated 7 U.S.C. § 136v(b)? Some courts have formulated the answer to this question by essentially asking a different question: does the award of damages by a jury amount to state regulation of labeling and packaging which the Congress impliedly preempted in § 136v(b)?

To determine what Congress may have implied, it is necessary to consider the statutory provision in its proper context—the statute as a whole.

Two primary considerations must be noted in the implied preemption context:

(1) the problem of resolving the potential conflict between § 136v(a) and § 136v(b). Several courts have not entertained any alternative to the application of § 136v(b) to a plaintiff's state tort law claims for negligence arising from inadequacy of the label. Other courts have noted the provision of § 136v(a) which specifically allows the states to regulate the use of pesticides by states. This is but one of the conflicts created by the divergence of case authority on this subject.

(2) arising from (1) but also standing alone to a certain extent is the (revisited) question of congressional intent. The purpose of the statute is the "ultimate touchstone" of supremacy clause (preemption doctrine) analysis. See *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 45 [107 S.Ct. 1549, 1552, 95 L.Ed.2d 39] (1987).

Because the whole notion of implied preemption concerns the interpretation of congressional intent and purpose from the statutory language and history, it is important to keep in mind these basic rules of preemption doctrine analysis and construction:

#### (1) Congressional Purpose

As noted above, there is a wide divergence of case authority as to the statutory purpose and intent of Congress in promulgating the FIFRA and its regulatory scheme. This divergence applies not only to the particular provisions (*e.g.*, §§ 136v(a) and 136v(b)) and how courts have construed their relationship to the FIFRA as a whole, but also to the overall Congressional purpose in enacting FIFRA. It must be recognized that the relationship between the parts and the whole is a crucial one. Although many courts have deemed the analysis of Congressional intent as distasteful, this Court would be shirking its duties if it dismissed such analysis. The court is left no choice but to examine Congressional intent where there is no express preemption. If the Court found no express preemption, but failed to make an examination of the statutory purpose, the court would effectively be allowing preemption of state laws or regulations merely because the Congress has taken some sort of action in the area.

### Congressional Occupation of the Field

■ Congressional purpose is a legitimate determination in considering the factors of implied preemption. The question whether the regulation of an entire field has been reserved by the Federal Government is, essentially, a question of ascertaining the intent underlying the federal scheme. *Hillsborough County*, 471 U.S. at 714, 105 S.Ct. at 2375. Although occupation of the field is an otherwise established factor of preemption analysis, the *Silkwood* court noted in considering a state

**1480**

law punitive damages claim which defendants contended was preempted by the Nuclear Regulatory Act (which as previously noted did not contained a preemption clause) that occupation of the field was not the appropriate test, but rather whether, "there is an irreconcilable conflict between the federal and state standards or whether the imposition of a state standard in a damages action would frustrate the objectives of the federal law." 464 U.S. at 256, 104 S.Ct. at 626.

### Conflict of State Law with Federal Law

The tests which follow the field preemption factor may be characterized as an extension of that test, but are also distinct. The possible incompatibility of the state with the federal law must be examined.

#### (1) actual conflict

■ In addition to express or implied preemption, a state law also is invalid to the extent that it "actually conflicts with a ... federal statute." *Ray v. Atlantic Richfield Co.,* 435 U.S. 151, 158, 98 S.Ct. 988, 994, 55 L.Ed.2d 179 (1978). See also, *Pacific Gas & Electric Co. v. State Energy Resources Conservation,* 461 U.S. 190, 204, 103 S.Ct. 1713, 1722, 75 L.Ed.2d 752 (1983).

#### (2) potential conflict

■ A relevant question here is whether compliance with both is impossible. *Florida Lime & Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 83 S.Ct. 1210, 10 L.Ed.2d 248 (1963). A conflict which is not otherwise an "actual conflict" will also be found when the state law "stands as an obstacle to the accomplishment and execution of the full purposes of Congress." *International Paper Co. v. Ouellette,* 479 U.S. at 492, 107 S.Ct. at 812, citing *Hillsborough County,* 471 U.S. at 713, 105 S.Ct. at 2375.

### Incompatibility of State Law with Federal Goals

This is a broad question. It must take into consideration the interests of the state through its tort law, to provide compensation for injuries to its citizens and the federal government, in providing uniform regulation of chemicals used in FIFRA. Whether the court chooses to recognize so or not, the distasteful act of divining congressional intent is of necessity in any substantial preemption analysis, as implied preemption analysis, almost by definition, requires such an undertaking. The balancing of these competing interests has been recognized in the area of intellectual property, where the interest of the federal government, as well as that of the states, is carefully guarded.[6] One particularly relevant question for this stage of analysis is whether Congress intended a balance be struck in the statutory scheme as a whole. This is particularly apparent when the statutory provisions are considered as a whole, with particular attention paid to the provisions regarding state competence in §§ 136v(a) and (b). The balance between state and federal authority can be distinguished at the level of implied preemption in the aforementioned ways because "we must bear in mind that not every state law that in some remote way may affect the [Congressionally occupied field] ... can be said to fall within the preempted field." *English v. General Electric Co.,* 110 S.Ct. at 2278.[7]

---

6. In *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.,* Justice O'Connor noted the Court's history of analysis with regard to the field of intellectual property: "[t]hus our past decisions have made clear that state regulation of intellectual property must yield to the extent that it clashes with the valance struck by Congress in our patent laws....Where it is clear how the patent laws strike that balance in a particular circumstance, that is not a judgment the States may second guess." *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.,* 489 U.S. 141, 152, 109 S.Ct. 971, 978, 103 L.Ed.2d 118 (1989).

7. In this recent decision, the Supreme Court reviewed the preemption of a plaintiff's claim for intentional infliction of emotional distress by a portion of the Energy Reorganization Act of 1974. The *English* Court considered three questions in particular in examining the preemption issue:

(1) [C]ongress can define explicitly the extent to which its enactments pre-empt state law. See *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 95–98 [103 S.Ct. 2890, 2898–2909, 77 L.Ed.2d 490] (1983). Pre-emption fundamentally is a question of congressional intent, see

## APPLICATION OF THE ANALYSIS TO THE PRESENT CASE

Presented with this veritable smorgasbord of factors for consideration of this motion, the Court will apply the following test, which is premised on U.S. Supreme Court holdings on appropriate factors, as well as a context for their proper consideration.

With regard to the application of the test, the Court will examine two relevant portions of FIFRA, §§ 136v(a) and 136v(b). Both sections are discussed here based on the common factors applicable to them. While Plaintiff may characterize its claim as arising from the "use" of a pesticide, and consequently to which § 136v(a) would apply, the Defendant would characterize the claim as falling under § 136v(b), based on a damage award serving as an indirect regulation of labeling. Because the Court wishes to rise above any semantic distinction based on the particular terms used in the pleadings and relevant papers in this case, and because it feels compelled to examine statutory sections in their proper context, the application of the test will include both sections.

**1. EXPRESS PREEMPTION:** *Is there specific statutory language evidencing congressional intent to preempt state law?*

■ The relevant portion of FIFRA is found at 7 U.S.C. § 136v., entitled "Authority of States."

*Analysis of § 136v(a), entitled "In general."* This section provides: "A State may regulate the sale or use of any federally registered pesticide or device in the State, but only if and to the extent the regulation does not permit any sale or use prohibited by this Act." This section is clearly an affirmative grant of authority to the states to regulate.

*Analysis of § 136v(b), entitled "Uniformity."* This section provides: "Such State shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under this Act." Here it is apparent that, by reading this section both in its statutory context, as well as in light of the state law here concerned, there can be no express preemption. The statutory language is not so explicit as to warrant a finding of express preemption where both of the other subsections of § 136v describe affirmatively the state regulation of pesticides, and where the particular admonition to the states does not describe in any meaningful way which action or type of action is prohibited. There certainly is no mention of

---

*Schneidewind v. ANR Pipeline Co.,* 485 U.S. 293, 299 [108 S.Ct. 1145, 1150, 99 L.Ed.2d 316] (1988), and when Congress has made its intent known through explicit statutory language, the court's task is an easy one.

(2) [I]n the absence of explicit statutory language, state law is pre-empted where it regulates conduct in a field that Congress intended the Federal Government to occupy exclusively. Such an intent may be inferred from a "scheme of federal regulation ... so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it," or where an Act of Congress "touch[es] a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject. *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230 [67 S.Ct. 1146, 1152, 91 L.Ed. 1447] (1947). Although this Court has not hesitated to draw an inference of field pre-emption where it is supported by the federal statutory and regulatory

schemes, it has emphasized: '[W]here ... the field which Congress is said to have pre-empted' includes areas that have traditionally been occupied by the States," congressional intent to supersede state laws must be "'clear and manifest.'" *Jones v. Rath Packing Co.,* 430 U.S. 519, 525 [97 S.Ct. 1305, 1309, 51 L.Ed.2d 604] (1977) ...

(3) [S]tate law is pre-empted to the extent that it actually conflicts with federal law. Thus, the Court has found pre-emption where it is impossible for a private party to comply with both state and federal requirements, see, e.g., *Florida Lime & Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 142–143 [83 S.Ct. 1210, 1217, 10 L.Ed.2d 248] (1963), or where state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines v. Davidowitz,* 312 U.S. 52, 67 [61 S.Ct. 399, 404, 85 L.Ed. 581] (1941). See also *Maryland v. Louisiana,* 451 U.S. 725, 747 [101 S.Ct. 2114, 2129, 68 L.Ed.2d 576] (1981).

*English v. General Electric,* 110 S.Ct. at 2275.

preemption of state tort claims in § 136v(b).

Accordingly, there is no express preemption found under either of the FIFRA sections under scrutiny here.

### 2. IMPLIED PREEMPTION

#### A. OCCUPATION OF THE FIELD: Does state law regulate conduct in a field that Congress intended the Federal Government to occupy exclusively?

■ The state law under scrutiny here is neither a statute nor a regulation of pesticides (or their labels). Rather, it is the Colorado common law tort of negligence. With this in mind, the Court will consider the federal government's action in the field, namely FIFRA.

FIFRA, at 7 U.S.C. § 136 *et seq.*, provides a means for protecting health, the environment and regulating standards. The regulatory scheme under FIFRA applies to some 40,000 chemicals or mixtures of chemicals used as pesticides. The Act classifies the pesticides and provides a framework for their registration with the Administrator (of the Environmental Protection Agency). The vast majority of statutory provisions concern the manufacture and sale, and penalties for improper use of pesticides. Registration of a pesticide is done by its manufacturer. If there is more than one manufacturer of a pesticide, there is no standard mandating that the Administrator insure uniformity in that only one (standard) label may issue.[8]

Occupation of the field may be inferred from a pervasive scheme of federal regulation. The scheme of federal regulation under FIFRA does not easily lend itself to a characterization as "pervasive" except as relates to the registration of pesticides, and even in that area there exists much flexibility (albeit under the authority of the EPA Administrator).

With regard to § 136v(a), the affirmative grant of authority to states to regulate the sale and use of pesticides remains intact. No occupation of the field is evident here.

With regard to § 136v(b), a certain caveat must be noted: where the field which Congress is said to have preempted includes areas that have been traditionally occupied by the States, congressional intent to supersede must be clear and manifest.[9] Due to the nature of the state law concerned, it remains unclear that the congressional intent under § 136v(b), as well as that supported by the statutory scheme as a whole, was intended to displace the otherwise available state tort remedy.

Having determined that field preemption is not indicative of any congressional intent to preempt the Plaintiff's state tort claim, the Court now turns to the two remaining factors of implied preemption.

#### B. ACTUAL CONFLICT: Is it impossible for a private party (i.e., Dow) to comply with both state and federal requirements?

The state law requirement for the tort of negligent failure to warn would dictate that the manufacturer (or perhaps seller or distributor) exercise the requisite duty of care (assuming such duty is found to exist) to warn of any dangerous properties which could cause harm to Plaintiff or his property through the use of pesticides.

The federal law requirements in this regard mandate simply that the manufacturer register the pesticide, and prescribes the manner in which this is done. The FIFRA does not mandate such registration procedure for any stated purpose other than regulating pesticides and their use for the protection of humans and the environment. With such broadly stated goals in mind, the FIFRA provides a framework for regulating standards within the pesticide industry. The dearth of specific provision as to how such goals might be carried out is indica-

---

8. See *Palmer v. Liggett Group* for distinctions drawn between the scheme of federal regulation between FIFRA and the Cigarette Act. 825 F.2d at 628–629.

9. *See English v. General Electric Co.*, 110 S.Ct. at 2275, citing *Jones v. Rath Packing Co.*, 430 U.S. 519, 525, 97 S.Ct. 1305, 1309, 51 L.Ed.2d 604 (1977), quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947).

tive of FIFRA's nature as setting forth minimum standards. These minimum standards stand in sharp contrast to other congressional regulatory schemes.[10]

For these reasons, there exists no actual conflict between the state law requirements and federal law requirements in FIFRA under either § 136v(a) or § 136v(b). There is no reason why a private party, situated as Dow is, could not comply with both sets of requirements.

C. POTENTIAL CONFLICT: Is the state law incompatible with federal goals? OR Did Congress leave no room for supplementary state regulation?

With regard to this question and its consideration after the actual conflict issue, it may appear academic to examine this question. However, the Court will undertake consideration of this question as it is possible that although no actual conflict exists, due to the nature of the relationship between the two sets of "regulation," a conflict could arise.

It goes without saying that the Court could not consider the question of whether a conflict will arise, as no such issue is presented, and if it were, it certainly would not be ripe for consideration at this time.

Once again, the Court must note the distinction between the two statutory sections under consideration here. Because the grant of authority contained in § 136v(a) for regulating the use of pesticides allows the states broad authority to regulate in that area, no potential conflict could arise here.

With regard to § 136v(b), however, the test at this point is critical as it hinges on interpretation—both of congressional in-

tent and the type of state regulation which it prohibits. It must be noted again here, that the court is required to consider the relationship between state and federal laws as they are interpreted and applied, not merely as they are written. *Jones v. Rath Packing Co.*, 430 U.S. at 526, 97 S.Ct. at 1310. With the federal statute and its relevant regulations under consideration, the Court notes that the basic purpose of the statute is to regulate the labelling of such products to provide purchasers with assurance of effectiveness and safety when used in compliance with the manufacturer's instructions. *Roberts v. Dow Chemical Co.*, 702 F.Supp. 195, 196 (N.D.Ill.1988) citing *Continental Chemiste Corp. v. Ruckelshaus*, 461 F.2d 331, 335 (7th Cir.1972).

In light of the meaning of § 136v(b) in context of the overall statutory purpose of FIFRA, the Court will now consider the consequences which the state law may have on this federal scheme of regulation. The state tort claim here at issue is an interest which may be characterized as "peculiarly local" in concern, due to its nature as a common law claim for negligence.[11] Any potential conflict which might arise from a jury award of damages cannot be characterized as a conflict with the statutory regulation scheme of FIFRA due to its failure to address any aspect of state tort recovery in either its statutory language or its regulations. It cannot be assumed that because it failed to specifically mention this possibility, it is nonetheless foreclosed. FIFRA's relatively flexible nature of regulating pesticides and their distribution forecloses such a conclusion.[12]

This Court accordingly finds that there is no potential conflict between the state tort

---

**10.** Other regulatory schemes which indicate much more thorough involvement by the federal government include: intellectual property, *see Bonito Boats*, 489 U.S. at 152, 109 S.Ct. at 978; labor relations, *see English*, 110 S.Ct. at 2279, n. 8; and the Cigarette Act, *see Palmer*, 825 F.2d at 628.

**11.** This "peculiarly local" classification is of concern here also with regard to whether Congress intended to displace the state tort claim for damages. *See National Agricultural Chemicals Association v. Rominger*, 500 F.Supp. 465, 470

(E.D.Cal.1980), citing *Florida Lime*, 373 U.S. at 146, 83 S.Ct. at 1219.

**12.** One court has characterized this relationship in a somewhat similar manner with regard to implied preemption analysis: "[t]he fact that EPA has determined that Chevron's label is adequate *for purposes of FIFRA* does not compel a jury to find that the label is also adequate *for purposes of state tort law* as well." (Emphasis in original.) *Ferebee v. Chevron Chemical Co.*, 736 F.2d at 1540.

claim and the FIFRA provision of § 136v(b).

In conclusion, the Court finds that there is no implied preemption of Plaintiff's state tort law claim for damages based on negligent failure to warn.

It is therefore ORDERED, Defendant Dow Chemical Company's motion for summary judgment is DENIED.