No. 13511

IN THE SUPREME COURT OF THE STATE OF MONTANA

1977

_____

WILLIAM E. WILLIAMS,

Plaintiff

-vs-

GEORGE MATOVICH et al.,

Defendants.

_____

Appeal from:  U.S. District Court
              Hon. James Battin, Judge presiding.

Counsel of Record:

    For Plaintiff:

        Steven L. Bunch argued, Helena, Montana

    For Defendants:

        Grant and Heard, Columbus, Montana
        Richard W. Heard argued, Columbus, Montana
        Blenkner and Laws, Columbus, Montana

    For Amicus Curiae:

        Hon. Michael Greely, Attorney General, Helena,
        Montana

_____

Submitted:  February 23, 1977

Decided: MAR 3 1977

Filed: MAR 3 1977

Thomas J. Kearney
_____ Clerk

Mr. Chief Justice Paul G. Hatfield delivered the Opinion of the Court.

This matter has been presented by certification from the United States District Court, District of Montana, Billings Division, seeking a declaratory judgment pursuant to Rule 1, M.R.Civ.P.

The stipulated facts, made part of this certification are:

During January 1976, plaintiff Williams purchased groceries on credit from defendant Matovich, pursuant to a verbal agreement. On January 26, 1976, Williams' employment at Stillwater Packing was terminated.

Matovich then initiated suit in state court against Williams for the alleged grocery debt in the sum of $157.34. Pursuant to section 93-4301, R.C.M. 1947, Matovich applied for a writ of attachment at the time the summons issued. The writ of attachment was issued by the clerk of court, Stillwater County, which was presented by the sheriff, Stillwater County, to Stillwater Packing. The sheriff was then given a check for the entire amount alleged due and owing in the complaint, leaving Williams with a paycheck of $9.82.

The sheriff has returned to Williams that portion of the paycheck exempted from garnishment by 15 U.S.C. 1671, et seq. The nonexempt portion has been retained, pending the outcome of a counter suit filed by Williams in federal district court, alleging the writ of attachment was a denial of due process.

The issue certified is whether the Montana writ of attachment statutes, sections 93-4301, et seq., R.C.M. 1947, as applied, violate the notice and opportunity to be heard requirements of due process as guaranteed by the Fourteenth Amendment to the United States Constitution?

The four leading cases in this area are Sniadach v.

Family Finance Corp., 395 U.S. 337, 89 S.Ct./ 23 L Ed 2d 349; 1820,

Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L Ed 2d 556;

Mitchell v. W. T. Grant Co., 416 U.S. 600, 94 S.Ct. 1895, 40

L Ed 2d 406, 412, 417; and North Georgia Finishing, Inc., v.

DiChem, Inc., 419 U.S. 601, 94 S.Ct. 2601, 41 L Ed 2d 210.

Sniadach involved the garnishment of wages under a Wisconsin statute, whereby the clerk of court issued a summons at the request of the creditor's attorney, and the latter, by serving the summons on the garnishee, froze the debtor's wages. The creditor was allowed 10 days in which to serve the summons and complaint on the debtor after service on the garnisher, although in this case the debtor was served the same day as was his employer. The wages would be unfrozen if the wage earner eventually won on the merits of the debt action. The Supreme Court held that this process violated the fundamental principles of due process as required by the Fourteenth Amendment because it did not provide notice and an opportunity for a hearing prior to the garnishment. Furthermore, the court stressed that wages are a specialized type of property, which when taken can cause severe hardship to the wage earner.

Fuentes dealt with a prejudgment attachment of personal property under Florida and Pennsylvania statutes. Both statutes involved an ex parte application made to the clerk, claiming an interest in the property, and the posting of a bond. Thereafter, the clerk issued a writ of replevin. Both statutes allowed the defendant to post a bond to regain possession. Otherwise, the property would be returned only if the defendant won on the merits of the litigation. Florida did require the creditor to file a complaint initiating a later court action, however Pennsylvania allowed the seizure of property under no more than a security bond and initiating no court action. Therefore, in the latter

- 3 -

situation, the defendant had to initiate the litigation if he were to ever be afforded a post-seizure hearing.  The Supreme Court, stating that notice and opportunity to be heard must be given at a meaningful time and in a meaningful manner, struck down both statutes, since neither provided for notice or an opportunity to be heard at any kind of prior hearing.  The court also rejected the argument that only necessities, such as the wages in Sniadach were afforded such protection, stating that the Fourteenth Amendment applied to "property" generally.

In Mitchell the court upheld a Louisiana statute allowing the prejudgment sequestration of personal property subject to a vendor's lien.  Emphasis was placed upon the fact that both the creditor and the debtor had an interest in the property subject to sequestration, as evidenced by the court's statement:

> "With this duality in mind, we are convinced that the Louisiana sequestration procedure is not invalid, either on its face or as applied. * * *" (Emphasis supplied.)

Both Sniadach and Fuentes were discussed and distinguished, with the court finding the following to be the saving characteristics of the Louisiana statute:

(1) The writ did not issue on a conclusory allegation of ownership or possessory rights.  The petitioner was required to set forth specific facts, on a verified petition or affidavit, showing the interest claimed and that it was within the power of the defendant to conceal, dispose of, or remove the property during the pendency of the action.

(2) The showing was made before a judge, and it was the judge who issued the writ.

(3) A bond was required of the petitioner.

(4) The debtor was entitled to seek immediate dissolution of the writ, which placed the burden of proving the grounds of the writ upon the creditor.

- 4 -

(5) The debtor, with or without seeking dissolution of the writ, was able to regain possession of the property by filing his own bond.

North Georgia Finishing involved the garnishment of a bank account of a corporation. The statutory procedure required an affidavit by plaintiff or his attorney to be presented to the clerk of court or any officer authorized to issue attachment, stating the amount due and that he had reason to apprehend the loss of the same unless garnishment issued. A bond of double the amount was also required of plaintiff. Defendant could dissolve garnishment by posting a bond of his own. The court stated that the statute was vulnerable for the same reasons as Fuentes, that the bank account was impounded and absent a bond by defendant, put totally beyond use pending litigation on the debt, all by writ of garnishment by a court clerk without notice and opportunity for an early hearing, and without participation by a judicial officer. Furthermore, the court stated that the statute was not saved by Mitchell since the safeguards present in Mitchell were lacking in the Georgia statute.

As applied to the facts of this case, we find that the Montana writ of attachment statutes, sections 93-4301 et seq., R.C.M. 1947, violate the notice and opportunity to be heard requirements of due process as set forth in the Fourteenth Amendment to the United States Constitution. We so find for two reasons.

First, Sniadach is the controlling authority for the factual situation at hand, which is very similar if not identical, to Sniadach. Here, wages have been attached pursuant to a writ issued by a clerk of court, at the request of a creditor, without notice or an opportunity for a hearing prior to the attachment. We are cognizant of the emphasis placed upon the

- 5 -

specialized type of property involved, wages. The court citing Sniadach reaffirmed this in Mitchell:

> " * * * 'a specialized type of property present-
> ing distinct problems in our economic system'
> * * * 'prejudgment garnishment of the Wisconsin
> type may as a practical matter drive a wage-earning
> family to the wall'* * *."

Furthermore, the suing creditor here, as in Sniadach, claimed no prior interest in the wages seized. There exists no duality of interest, which was present in Fuentes and Mitchell.

Second, even if Mitchell governed as contended by Matovich, the Montana statute, as applied, failed. North Georgia Finishing also lacked the duality of interest, however the court did mention that none of the saving characteristics of Mitchell were present. Such is the case here. Though we find Sniadach controlling, the saving characteristics of Mitchell are absent in the Montana prejudgment attachment procedure.

Matovich contends that Montana provides three procedures whereby the defendant can apply to the court for relief either prior or subsequent to the levy, and also requires a bond of the plaintiff. Pursuant to sections 93-4327 and 4328, R.C.M. 1947, defendant can move to discharge the attachment upon the condition that he file a bond of his own. Second, pursuant to sections 93-4329 and 4330, R.C.M. 1947, defendant, either before or after the release of attached property or before the actual attachment, can move the court to discharge the attachment on the grounds that it was improperly or irregularly issued. If from the application it satisfactorily appears the writ was so issued, it must be discharged. Finally, sections 93-4332 and 93-4333, R.C.M. 1947, allow the debtor to seek discharge of the writ any time before the actual application of the attached property to the payment of the judgment.

The only Montana safeguards equal to any of those in Mitchell are that the plaintiff must file a bond to obtain the

writ and defendant may file a bond to release his property. The Montana procedures for defendant to question the attachment do not equal those of <u>Mitchell</u>. In <u>Mitchell</u> the defendant could merely file his motion to dismiss, which placed the burden on plaintiff to prove the facts substantiating the writ. However, sections 93-4331 and 93-4333, R.C.M. 1947, place the burden upon defendant to prove that the writ was improperly or irregularly issued. Additionally, the opportunity for a pre-seizure hearing under section 93-4329 is illusory. More likely than not, as in this case, the defendant is unaware that the writ has issued until the property is seized.

Furthermore, the writ issued upon an affidavit presenting a conclusory allegation that a debt was owed to plaintiff. Section 93-4302, R.C.M. 1947, requires no showing by way of specific facts, as did the statute considered in <u>Mitchell</u>. The application under section 93-4302 was made to the clerk of court who issued the writ. This also falls short of <u>Mitchell</u> wherein this determination was made by the judge.

Therefore, we find that, as applied, sections 93-4301 et seq., R.C.M. 1947, violate the fundamental principles of due process guaranteed by the Fourteenth Amendment to the United States Constitution.

_____
Chief Justice

We concur:

_____

_____

_____

_____
Justices

- 7 -