No. 87-72

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

---

OTTO STENSVAD,

        Plaintiff and Respondent,

-vs-

EDWARD TOWE and THOMAS E. TOWE,

        Defendants and Appellants.

---

APPEAL FROM: District Court of the Fourteenth Judicial District,
In and for the County of Musselshell,
The Honorable Byron Robb, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Towe, Ball, Enright & Mackey; Thomas E. Towe argued,
        Billings, Montana

    For Respondent:

        Wright, Tolliver & Guthals; Kenneth D. Tolliver argued,
        Billings, Montana

---

Submitted: May 5, 1988

Decided: June 21, 1988

Filed: JUN 2 1 1988

_Ethel M. Harrison_
Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

The defendants (Towes) appeal a $116,337.10 judgment entered on a jury verdict against them, in the District Court for the Fourteenth Judicial District, Musselshell County. The action is based on the Towes' attachment of Mr. Stensvad's assets from 1972 through 1979. We affirm, except for two modifications to the damages awarded.

The Towes raised fifteen issues on appeal. We restate them as follows:

1. Did the court's decision to dismiss the Bank as a defendant automatically eliminate the Towes' liability?

2. Was there error in the instructions on, award of, or amount of punitive damages?

3. Is there reversible error in instruction no. 9, which did not require proof of want of probable cause and malice and which stated that the jury "must" award damages which would compensate Mr. Stensvad "fully"?

4. Should the claim under 42 U.S.C. § 1983 have been dismissed, and does the evidence support the verdict on this claim?

5. Does the evidence support the award of damages for emotional or mental distress?

6. Does the evidence support the interest awarded on attorney fees?

7. Does the evidence support the award of $5,000 for loss of income?

8. Does the evidence support the award of damages in spite of Mr. Stensvad's failure to mitigate by posting an attachment bond or by seeking to have the attachment released?

9. Was it proper to admit evidence of Edward Towe's statements and opposition to the bank charter?

10. Did the trial court err in allocating the damages between the defendants?

In 1971, Edward Towe was a shareholder of the Miners and Merchants Bank of Roundup (Bank). Both he and his son, Thomas Towe, were officers at the Bank. Otto Stensvad was a supporter of formation of a new bank in Roundup. He also had guarantied his son's loans from the Bank for operation of a feedlot and grain elevator. Mr. Stensvad brought a court action seeking exoneration from his guaranties at the Bank. The Bank counterclaimed, alleging nonpayment of the guarantied notes. It then requested an injunction to prevent Mr. Stensvad from transferring his property before the litigation was resolved. The request for an injunction was denied.

Then, in January 1972, Thomas Towe, as attorney for the Bank, obtained an ex parte prejudgment attachment of Mr. Stensvad's property, pursuant to §§ 93-4301 to -4347, RCM (1947). Edward Towe acted as surety for the attachment. The property attached included real property, corporate stock, bonds, and oil and gas interests. The attachment was dissolved by judicial order in 1979. Stensvad v. Miners & Merchants Bank (1979), 183 Mont. 160, 598 P.2d 1083.

In 1980, Mr. Stensvad brought this suit for damages resulting from the attachment of his assets. The Bank, originally named as a defendant, was dismissed by the court before trial. Mr. Stensvad argued at trial that the Towes should have known from the beginning that this attachment was wrongful. On that issue, both sides presented extensive expert testimony by lawyers. The jury returned a verdict for Mr. Stensvad. It awarded him $5,000 for loss of income from his assets; $16,115 for attorney fees plus interest; $5,000 for mental anguish; $75,000 in punitive damages; $10 for violation of his constitutional rights under 42 U.S.C. § 1983; and $10 in punitive damages for violation of his

3

constitutional rights under 42 U.S.C. § 1983. The Towes appeal.

## I

Did the court's decision to dismiss the Bank as a defendant automatically eliminate the Towes' liability?

In dismissing the Bank, the District Court relied upon an order in a related proceeding. That order described the dismissal of the Bank as a substitution of the real parties in interest. The order described the arrangements by which the Towes had sold the bank in the mid-1970's and the "ongoing adversarial relationship" between the Towes and the Bank's buyers. The order also described the Towes' continued control over this litigation.

The Towes contend that the claims against them are based on master-servant law and that the court's voluntary dismissal of the Bank requires that they, as the Bank's servants, also be dismissed. The facts as set out in the order described above fly in the face of this contention. We conclude that the dismissal of the Bank constituted a substitution of parties, rather than the dismissal of a principal and retention in the suit of agents. We hold that the dismissal of the Bank did not automatically dismiss the Towes from this action.

## II

Was there error in the instructions on, award of, or amount of punitive damages?

The Towes argue that when read together, jury instructions no. 9 and no. 18 essentially require that punitive damages must be awarded to Mr. Stensvad. Instruction no. 9 stated:

> You are instructed that the attachment of Otto Stensvad's assets by the Defendants in this case was wrongful and that you must award Otto Stensvad

4

a sum of money to compensate him fully for all damage proximately caused him by the wrongful attachment, if any.

Instruction no. 18 stated, in relevant part:

Plaintiff OTTO STENSVAD has asked for punitive or exemplary damages which may be allowed by you provided you first find that the Plaintiff OTTO STENSVAD has suffered actual damage. One who has suffered injury to his person or property through the oppression, fraud, or malice of another, may recover in addition to his actual damages, damages for the sake of example and by way of punishing such other party.

When I use the expression "malice" I mean a course of action that imports a wish to vex, annoy or injure another person, or an intent to do a wrongful act; such malice may be either actual or presumed from all the material facts.

The Towes argue that after receiving these two instructions, all that remained for the jury was to determine whether the Towes acted intentionally in attaching Mr. Stensvad's property. The Towes do not dispute that they intentionally attached the property. They did argue at trial that they were not intentionally doing a wrongful act, or acting out of oppression or malice. Mr. Stensvad did not contend that the Towes acted fraudulently.

After carefully considering the instructions, we conclude that the jury was not required to find that the Towes intentionally did a wrongful act. If the jury had found that the Towes did not act with oppression, fraud, or malice, it would not have been required to award punitive damages. If the jury had found that the Towes were not intentionally taking action which they knew or should have known was wrongful, no punitive damages would be awarded.

The Towes next argue that the evidence is insufficient to support a verdict that they are guilty of the malice

5

necessary for the award of punitive damages. However, Mr. Stensvad submitted evidence that the Towes must have been aware from the time of the attachment that it was probably wrongful and that they perfected and maintained the attachment anyway. We conclude that substantial evidence in the record supports the jury's finding that the Towes acted with oppression or malice, justifying the award of punitive damages.

The Towes' final argument on punitive damages is that the amount of punitive damages awarded, $75,000, justifies a presumption of passion or prejudice on the part of the jury. The jury was instructed that:

> If you find that exemplary damages should be allowed, then in determining the amount, you should consider all of the attendant circumstances, including the nature, extent and enormity of the wrong, the intent of the party committing it, the amount, if any, allowed as actual damages, and, generally, all the circumstances attending the particular act involved, including any mitigating circumstances which may operate to reduce without wholly defeating exemplary damages.

This instruction correctly sets forth factors to be considered in setting an amount of punitive damages. See, e.g., Safeco Ins. Co. v. Ellinghouse (Mont. 1986), 725 P.2d 217, 227, 43 St.Rep. 1689, 1701. The jury was presented with evidence that the Towes maintained the attachment on Mr. Stensvad's property for some eight years, in the face of its obvious wrongfulness. The $75,000 in punitive damages does not appear to us to have resulted from passion or prejudice on the part of the jury. We therefore must affirm the jury's verdict in this regard. Safeco, 725 P.2d at 227.

6

## III

Is there reversible error in instruction no. 9, which did not require proof of want of probable cause and malice and which stated that the jury "must" award damages which would compensate Mr. Stensvad "fully"?

The Towes cite Montgomery v. Hunt (Mont. 1987), 738 P.2d 887, 44 St.Rep. 1081, as authority that both want of probable cause and malice must be present in a tortious wrongful attachment. They say that the court's pretrial "ruling" that these elements need not be proven is reversible error. In reviewing the record, we note that the court did not make a final ruling on this issue prior to trial. It stated only that its inclination at that time was not to require proof of these elements. It clearly reserved final judgment until after hearing the evidence. Instruction no. 9 did not require proof of probable cause or malice.

The Towes also argue on appeal that the giving of instruction no. 9 is reversible error because the instruction stated that the jury "must" award Mr. Stensvad damages to compensate him "fully" for damages proximately caused by the Towes' wrongful attachment. They argue that the use of these words was improper.

At the time of settling jury instructions, the only objection by the Towes' attorney to instruction no. 9 was that the words "if any" should be added to allow for nominal damages. The court and counsel for Mr. Stensvad agreed to this amendment and the words were added at the end of the instruction. The Towes' counsel then withdrew his objection to the instruction.

On appeal, we will not consider objections which were not raised at the trial court level. Thiel v. Johnson (Mont. 1985), 711 P.2d 829, 832, 42 St.Rep. 2010, 2013. None of the objections now raised by the Towes to instruction no. 9 were

raised at trial. We therefore hold that the giving of instruction no. 9 did not constitute reversible error.

IV

Should the claim under 42 U.S.C. § 1983 have been dismissed, and does the evidence support the verdict on this claim?

Title 42 U.S.C. § 1983 provides a remedy for deprivations of rights secured by the Constitution and laws of the United States by any person acting "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory. . . ." The Towes assert that an action which alleges misuse or abuse of a state statute by a private individual is not actionable under 42 U.S.C. § 1983.

A § 1983 action may be brought by a plaintiff debtor against a defendant creditor who has wrongfully obtained prejudgment attachment of plaintiff's assets under a defective state prejudgment attachment statute. Lugar v. Edmondson Oil Co. (1982), 457 U.S. 922, 73 L.Ed.2d 482, 102 S.Ct. 2744. The creditor in that case argued that his actions did not constitute state action, and that the complaint therefore did not state a claim upon which relief could be granted. The Court described the necessary inquiry as 1) whether the deprivation results from exercise of a right or privilege having its source in state authority; and 2) whether the creditor, as a private party, could be appropriately characterized as a "state actor." Lugar, 457 U.S. at 937. The Court held that:

> [w]hile private misuse of a state statute does not describe conduct that can be attributed to the State, the procedural scheme created by the statute obviously is the product of state action. This is subject to constitutional restraints and properly may be addressed in a § 1983 action, if the second

8

element of the state-action requirement is met as well.

Lugar, 457 U.S. at 941. The second element was met because "the State has created a system whereby state officials will attach property on the ex parte application of one party to a private dispute." Lugar, 457 U.S. at 942.

In the present case, the procedural scheme under which the Towes attached Mr. Stensvad's property was created by §§ 93-4301 to -4347, RCM (1947). Like the statutory scheme in Lugar, the Montana scheme provided for attachment on the ex parte application of the creditor. That scheme has since been invalidated. See Williams v. Matovich (1977), 172 Mont. 109, 560 P.2d 1338. We conclude, based on Lugar, that the § 1983 claim was proper.

The Towes also claim that there is no evidence to disprove their good faith reliance on an existing state statute, which they argue is a valid defense to the § 1983 claim. The good faith defense is an issue of fact. It was presented to the jury in instruction no. 28. Again, expert testimony of lawyers was presented by both sides on whether invalidation of the attachment was foreseeable. The attachment was maintained until 1979, and Mr. Stensvad presented expert testimony that Tom Towe should have known, as a lawyer, that the attachment was invalid. The jury, after considering the evidence presented, found that the Towes violated Mr. Stensvad's constitutional rights. We conclude that there is sufficient evidence to support the jury's verdict on the § 1983 claim.

V

Does the evidence support the award of damages for emotional or mental distress?

The jury awarded Mr. Stensvad $5,000 for mental anguish. As stated in instruction no. 16, damages for mental anguish

9

or distress, absent physical injury, are recoverable only if defendants' conduct resulted in a substantial invasion of a legally protected interest which caused a significant impact upon the person of the plaintiff. See Johnson v. Supersave Markets, Inc. (Mont. 1984), 686 P.2d 209, 213, 41 St.Rep. 1495, 1500.

Mr. Stensvad was unable to testify at trial due to ill health which is not related to this action. His wife testified that, as a result of the Towes' attachment of his property, her husband did not sleep many nights and would wake her up crying. She also testified that because of his embarrassment about the financial situation in which he was placed after the assets were seized, he quit going to Rotary Club, to Hospital Board meetings, and to the city of Melstone. Mr. Stensvad's son also testified that his father was very upset by his inability to pay his bills after the attachment and that he avoided people because of his embarrassment. We hold that the testimony of the Stensvads was a sufficient basis for the jury's award of $5,000 in damages for mental distress.

VI

Does the evidence support the interest awarded on attorney fees?

The stipulation on attorney fees read "It is stipulated for purposes of this action that Otto Stensvad expended the sum of $8,094.00 in legal fees in order to obtain the dissolution of the attachment to which reference is made in this action." That sum represents the attorney fees incurred in the action decided by this Court in 1979. The stipulation makes no mention of interest.

The sum awarded by the jury for attorney fees included $8,021 in prejudgment interest. However, the stipulation signed by the attorneys did not establish that the attorney

10

fees were payable by the Towes. Only when the jury determined that Mr. Stensvad was entitled to damages did the liability for those damages become fixed. Therefore, we hold that no prejudgment interest may properly be awarded on the attorney fees. Since we conclude that an award of interest on the attorney fees is not appropriate, the issue of whether the rate of interest was excessive is rendered moot.

## VII

Does the evidence support the award of $5,000 for loss of income?

Mr. Stensvad argues that this award is supported by the evidence submitted by his accountant that he lost $4,309.21 because he was unable to invest income from oil royalties and bonds which the Towes had attached. He also presented evidence that he had to borrow money to live on at 7.5% to 8.5% during the period of the attachment. Where there is substantial credible evidence to support the jury's verdict on damages, it will be upheld. Maykuth v. Eaton (Mont. 1984), 687 P.2d 726, 727, 41 St.Rep. 1800, 1802. We conclude that the jury's award of these damages is supported in the record.

## VIII

Does the evidence support the award of damages in spite of Mr. Stensvad's failure to mitigate by posting an attachment bond or seeking to have the attachment released?

By this argument, the Towes attempt to shift the burden for their wrongful attachment to Mr. Stensvad. The Towes' attorney argued at trial that an intervening cause of Mr. Stensvad's damages was his failure to act to have the attachment dissolved. Mr. Stensvad presented expert testimony that he did not have the obligation to do more than he did. The jury was instructed to award Mr. Stensvad those damages "proximately caused" by the wrongful attachment. It was also instructed on Mr. Stensvad's duty to mitigate damages. The

11

jury, in its verdict, found that the damages were caused by the Towes' actions. We hold that there is substantial evidence to support the jury's verdict.

IX

Was it proper to admit evidence of Edward Towe's statements and opposition to the bank charter?

The testimony to which this objection is made came from Mr. Brower and Mr. Bianchi, participants in the process of seeking to open a new bank in Roundup. They testified that the Towe family gave considerable opposition to the new bank. The Towes argue that this testimony was irrelevant and prejudicial. The District Court overruled that objection at trial.

Mr. Stensvad argues on appeal that this evidence is relevant to the state of mind of Edward Towe toward Mr. Stensvad during the formation of the competing bank in Roundup. Proof of state of mind was required in this case to show the oppression, fraud, or malice required for punitive damages. We agree with the ruling of the District Court. The evidence of Edward Towe's statements and opposition to the bank charter were relevant, as defined under Rule 401, M.R. Evid. We hold that admission of this evidence is not reversible error.

X

Did the trial court err in allocating the damages between the defendants?

The jury, in its special verdict, made note of its allocation of each item of damages between the defendants. The jury had been instructed, at instruction no. 22, that:

> If you find one or more of the defendants to
> be liable, and after careful consideration of the
> evidence you are unable to determine the separate
> amount of damage each defendant caused, then you

12

shall not divide the plaintiffs' total damages between them, but your verdict shall be for the total damages against the one or more defendants whom you find to be liable.

In its answers to special interrogatories, the jury split the $5,000 awarded for loss of income 50-50 between Edward and Tom Towe, as it did the $5,000 in damages for mental anguish, the $75,000 in punitive damages, the $10 for constitutional violations, and the $10 in punitive damages for constitutional violations. The jury split the $16,115 award of attorney fees 70% to Tom Towe and 30% to Edward Towe. The general verdict form did not require the jury to split damages; but simply to list the total amount of damages awarded under each theory.

Contrary to the jury's allocation of damages in the special interrogatories, the court, in its judgment, awarded all damages against both defendants jointly and severally. We see no reason for disturbing the allocation made by the jury. A jury is clearly permitted to apportion punitive damages between two defendants. See Edquest v. Tripp & Dragstedt Co. (1933), 93 Mont. 446, 457, 19 P.2d 637, 640. Under the instructions given, all damages were apportionable. We order that the jury's apportionment be reinstated.

We remand this cause to the District Court for entry of an order deleting the interest on attorney fees as discussed under Issue VI of this opinion and reinstating the jury's apportionment of damages as discussed under Issue X of this opinion. With these exceptions, the judgment of the District Court is affirmed. In the exercise of our discretion under 42 U.S.C. § 1983, we order that the parties shall pay their own attorney fees on appeal.

Justice

13

We Concur:

_J. A. Turnage_
Chief Justice

_John Conway Harrison_

_John G. Sheehy_

_R. C. Gulbrandson_

_William E. Hunt_

_R. C. McDonough_
Justices