MONTANA POLE & TREATING
PLANT and Torger L. Oaas,
Plaintiffs,

v.

I.F. LAUCKS AND COMPANY, Monsanto Chemical Company, Reichold Chemicals, Inc. and Dow Chemical Company, and Chapman Chemical Company, and Does 1 through 50, Defendants.

No. CV–86–147–BU–PGH.

United States District Court,
D. Montana,
Butte Division.

Aug. 15, 1991.

Torger S. Oaas, Jr., Lewistown, Mont., Bernard J. Allard, Popelka, Allard, McCowan & Jones, San Jose, Cal., for plaintiffs.

Dolphy O. Pohlman, Corette Smith Pohlman & Allen, Butte, Mont., Bruce A. Featherstone, Scott R. Bauer, Kirkland & Ellis, Denver, Colo., for Monsanto Chemical Co.

P. Keith Keller Keller, Reynolds, Drake, Sternhagen & Johnson, Helena, Mont., for Dow Chemical.

## MEMORANDUM AND ORDER

HATFIELD, Chief Judge.

### BACKGROUND

From 1946 through 1984, Montana Pole & Treating Plant ("Montana Pole") owned and operated a wood-treating facility in Butte, Montana. Montana Pole's wood-treating process utilized the preservative pentachlorophenol ("penta"), which was mixed with various petroleum products. The process generated waste penta, which Montana Pole disposed of in a manner that ultimately contaminated the real property on and near the treatment facility.

In June, 1985, the United States Environmental Protection Agency ("EPA") declared Montana Pole's facility a "Superfund Site" and initiated an emergency cleanup operation. The EPA also notified Montana Pole of its responsibility, under the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA"), 42 U.S.C. §§ 9601–9675 (1987), for the cleanup costs.

On November 15, 1986, Montana Pole and its principal stockholder, Torger L. Oaas, instituted the above-entitled action [1] against the suppliers of the penta utilized in the treatment process,[2] seeking indemnity for the cleanup costs, as well as compensatory damages, under the following

---

1. Plaintiffs initially filed suit in the District Court of the Second Judicial District of the State of Montana. Defendant Monsanto Company removed the action to this court on December 10, 1986, pursuant to 28 U.S.C. § 1441, invoking this court's diversity jurisdiction under 28 U.S.C. § 1332.

2. The named defendants include I.F. Laucks and Company, Monsanto Company, Reichold Chemicals, Inc., Dow Chemical Company and Chapman Chemical Company.

causes of action: negligence, breach of express and implied warranties, nuisance and strict products liability. Additionally, Torger Oaas seeks compensatory damages, in his individual capacity, for alleged "depression, anger, anxiety, outrage and embarrassment" as a result of the EPA's seizure of the treating site.

Following lengthy discovery, defendants moved for summary judgment, pursuant to Fed.R.Civ.P. 56, asserting, *inter alia*, (1) plaintiffs' "failure to warn" claims were preempted by federal law; and (2) plaintiffs' claims for property damage were barred by the applicable statute of limitations. Defendants also moved for summary judgment on plaintiffs' claims for indemnity, nuisance and breach of warranty, as well as Torger Oaas' individual claim.

The referenced motions were referred to the Magistrate Judge for the District of Montana, the Honorable Robert M. Holter, for findings and recommendations, pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and Rule 400–4 of the Rules of Procedure of the United States District Court for the District of Montana. The Magistrate Judge filed his report with the court, recommending summary judgment be entered in defendants' favor. The Magistrate Judge concluded (1) plaintiffs' claims for indemnity, nuisance and breach of warranty failed as a matter of law; (2) plaintiffs' property damage claims were time-barred; and (3) Torger Oaas' emotional injury claim lacked any legal or factual basis. The Magistrate Judge also recommended the court deny defendants' summary judgment motion asserting federal preemption of plaintiffs' "failure to warn" claims.

In accordance with 28 U.S.C. § 636(b), the parties were afforded the opportunity to file written objections to the Magistrate Judge's report. Plaintiffs filed objections, taking issue with the Magistrate Judge's conclusions regarding (1) the statute of limitations issue; and (2) the viability of Torger Oaas' individual claim. The defen-

dants in turn challenge the Magistrate Judge's recommendation regarding the federal preemption issue. Having conducted a *de novo* review of the record, and considering the objections presented by the parties, the court is prepared to rule.

## DISCUSSION

### A. *Preemption*

■ In moving for summary judgment, defendants Reichhold Chemicals, Inc. and Dow Chemical Company assert the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), 7 U.S.C. §§ 136 *et seq.*, preempts state law tort recovery based on a failure to warn theory.[3] Accordingly, defendants maintain plaintiffs' claims premised upon defendants' alleged breach of a purported duty to warn plaintiffs of the proper methods for disposing of penta waste fail as a matter of law. For the reasons discussed below, the court will DENY defendants' motion.

Federal preemption of state law is based on the supremacy clause of the United States Constitution, article VI, clause 2. Preemption can be either express or implied; it "is compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose." *Papas v. Upjohn Co.*, 926 F.2d 1019, 1021 (11th Cir.1991), *quoting, Fidelity Federal Savings & Loan Ass'n v. De La Cuesta*, 458 U.S. 141, 153, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664 (1982). Preemption can occur in a number of ways:

> Preemption occurs when Congress, in enacting a federal statute, expresses a clear intent to preempt state law, when there is outright or actual conflict between state and federal law, where compliance with both federal and state law is in effect physically impossible, where there is implicit in federal law a barrier to state regulation, where Congress has legislated comprehensively, thus occupying an entire field of regulation and leaving no room for the States to supplement

---

**3.** Defendants have provided the court with affidavits establishing the penta products manufactured and sold by the defendants were registered with the EPA, pursuant to FIFRA's label-

ing and packaging requirements. Plaintiffs have not presented any evidence or arguments to the contrary.

federal law, or where the state law stands as an obstacle to the accomplishment and execution of the full objectives of Congress.

*Roberts v. Dow Chemical Co.,* 702 F.Supp. 195, 196 (N.D.Ill.1988), *quoting, Louisiana Public Service Commission v. Federal Communications Commission,* 476 U.S. 355, 106 S.Ct. 1890, 90 L.Ed.2d 369 (1986). There is, however, a presumption that "Congress did not intend to displace state law." *Id., quoting, Maryland v. Louisiana,* 451 U.S. 725, 746, 101 S.Ct. 2114, 2129, 68 L.Ed.2d 576 (1981). This presumption is heightened where the federal law would have the effect of barring a state from exercising its traditional police powers. *Riden v. ICI Americas, Inc.,* 763 F.Supp. 1500, 1503 (W.D.Mo.1991).[4]

■ Preemption analysis is largely a matter of statutory construction. *Roberts, supra,* 702 F.Supp. at 196. The statute at issue, FIFRA, provides a comprehensive system for the registration and labeling of pesticides. *Fisher v. Chevron Chemical Co.,* 716 F.Supp. 1283, 1286 (W.D.Mo.1989). Under FIFRA, the EPA is required to register a pesticide if it determines (1) the pesticide's labeling and other materials comply with FIFRA's requirements; and (2) the pesticide, when used properly, will perform its intended purpose without unreasonable adverse effects on the environment. *Papas, supra,* 926 F.2d at 1023, *citing,* 7 U.S.C. § 136a(c)(5). When a pesticide is registered, the manufacturer must

submit the proposed label to the EPA for approval; any changes in the label must also be approved by the EPA. *Fitzgerald v. Mallinckrodt, Inc.,* 681 F.Supp. 404, 406 (E.D.Mich.1987).

■ At the outset, this court joins the majority of federal courts in holding state common law remedies are not expressly preempted by FIFRA. *Riden v. ICI Americas, Inc., supra,* 763 F.Supp. at 1505 (citations omitted). The question before this court, therefore, is whether FIFRA and the labeling regulations promulgated thereunder impliedly preempt state common law tort claims based on labeling deficiencies. Although the issue has not been addressed by the court of appeals for this circuit, it has been the subject of two contradictory appellate decisions, *Ferebee v. Chevron Chemical Co.,* 736 F.2d 1529 (D.C.Cir. 1984), *cert. denied,* 469 U.S. 1062, 105 S.Ct. 545, 83 L.Ed.2d 432 (1985); and *Papas v. Upjohn Co.,* 926 F.2d 1019, 1021 (11th Cir. 1991).[5]

In *Ferebee,* the court upheld a jury verdict in favor of an agricultural worker who died from pulmonary fibrosis contracted from a long-term skin exposure to paraquat.[6] The court found plaintiff's claims were not impliedly preempted by FIFRA because the manufacturer could comply with both the federal and state (common law) requirements. 736 F.2d at 1542. The court explained that a state court jury verdict would not automatically "require" a manufacturer to change its labels, but rath-

---

**4.** State common law tort remedies traditionally have been regarded as within "the scope of state superintendence." *Riden, supra,* 763 F.Supp. at 1503, n. 4, *quoting, Florida Lime & Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 144, 83 S.Ct. 1210, 1218, 10 L.Ed.2d 248 (1963).

**5.** District courts are also split on the issue. *Papas, supra,* 926 F.2d at 1021, n. 1. Cases finding preemption include *Hurt v. Dow Chemical Co.,* 759 F.Supp. 556 (E.D.Mo.1990); *Kennan v. Dow Chemical Co.,* 717 F.Supp. 799 (M.D.Fla.1989); *Fisher v. Chevron Chemical Co.,* 716 F.Supp. 1283 (W.D.Mo.1989); *Herr v. Carolina Log Bldgs., Inc.,* 771 F.Supp. 958 (S.D.Ind.1989); *Watson v. Orkin Exterminating Co.,* No. JFM-88–2427, 1988 WL 235673 (D.Md. Nov. 8, 1988); and *Fitzgerald v. Mallinckrodt, Inc.,* 681 F.Supp. 404 (E.D.Mich.1987). Cases in which district courts found no preemption include *Riden v. ICI*

*Americas, Inc.,* 763 F.Supp. 1500 (W.D.Mo.1991); *Arkansas Platte & Gulf Partnership v. Van Waters & Rogers, Inc.,* 748 F.Supp. 1474 (D.Colo. 1990); *Evenson v. Osmose Wood Preserving Inc.,* 760 F.Supp. 1345 (S.D.Ind.1990); *Stewart v. Ortho Consumer Products,* 1990 WL 36129 (E.D.La. 1990); *Cox v. Velsicol Chem. Corp.,* 704 F.Supp. 85 (E.D.Pa.1989); *Whitener v. Reilly Indus., Inc.,* No. 87–5224 (S.D.Ill.1989); *Roberts v. Dow Chem. Co.,* 702 F.Supp. 195 (N.D.Ill.1988); and *Wilson v. Chevron Chem. Co.,* 1986 WL 14925 (S.D.N.Y.1986).

**6.** The verdict was based on the theory that the defendant's failure to label paraquat in a manner which adequately warned that long-term skin exposure to paraquat could cause serious lung disease made the defendant strictly liable for plaintiff's injuries. 736 F.2d at 1532.

er, would leave the manufacturer with the "choice of how to react" to the jury verdict. *Kennan v. Dow Chemical Co., supra,* 717 F.Supp. at 806 ("Chevron can continue to use the EPA–approved label and can at the same time pay damages to successful tort plaintiffs such as Mr. Ferebee; alternatively, Chevron can petition the EPA to allow the label to be made more comprehensive.")[7]

The Eleventh Circuit Court of Appeals, in *Papas v. Upjohn Co., supra,* concluded plaintiff's claims for personal injuries, based on theories of negligent labeling and failure to warn, were preempted by FIFRA. The court held "the federal government has occupied the entire field of labeling regulation, leaving no room for the states to supplement federal law, even by means of state common law tort actions." 926 F.2d at 1025. The court added that a jury determination that a pesticide's label was inadequate would (1) directly conflict with the EPA's prior affirmation of the label's adequacy; and (2) force the manufacturer to alter the label or risk further lawsuits. 926 F.2d at 1025–26.

A jury's imposition of damages in a state tort suit premised on labeling claims would disrupt the methods by which FIFRA protects man and the environment because it would inject irrelevant considerations into the EPA's evaluation of a pesticide and its labeling and would second guess the EPA's conclusions.

*Papas v. Upjohn Co., supra,* 926 F.2d at 1026.

■ After careful consideration, the court is unpersuaded by the reasoning set forth in *Papas.* Rather, the court adopts *Ferebee* and the line of cases holding FIFRA does not impliedly preempt state common law tort claims against manufacturers of EPA-registered pesticides.

The United States Supreme Court, in *Wisconsin Public Intervenor v. Mortier,* —— U.S. ——, 111 S.Ct. 2476, 115 L.Ed.2d 532 (1991), rejected the argument that FIFRA occupies the entire field of pesticide regulation, thereby precluding state or local regulation of pesticide use. The Court, in reversing the Wisconsin Supreme Court, held a local ordinance requiring, *inter alia,* a permit for applying pesticides to private land, was not preempted by FIFRA. In so holding, the Court noted FIFRA did not, either expressly or impliedly, indicate that Congress sought to supplant local authority over pesticide regulation. —— U.S. at —— – ——, 111 S.Ct. at 2483–86.

In contrast to other implicitly preempted fields, the 1972 enhancement of FIFRA does not mean that the use of pesticides can occur "only by federal permission, subject to federal inspection, in the hands of federally certified personnel and under an intricate system of federal commands." *City of Burbank v. Lockheed Air Terminal,* 411 U.S. [624] at 634 [93 S.Ct. 1854, 1860, 36 L.Ed.2d 547], *quoting, Northwest Airlines v. Minnesota,* 322 U.S. 292, 303 [64 S.Ct. 950, 956, 88 L.Ed. 1283] (1944) (Jackson, J., concurring). The specific grant of authority in § 136v(a) consequently does not serve to hand back to the States powers that the statute had impliedly usurped. Rather, it acts to ensure that the States could continue to regulate use and sales even where, such as with regard to the banning of mislabeled products, a narrow pre-emptive overlap might occur.

*Mortier,* —— U.S. at —— – ——, 111 S.Ct. at 2486.

Accordingly, this court concludes states are free to regulate, through common law remedies, the use and sale of pesticides.

The EPA's conclusion that a pesticide's label meets FIFRA requirements "does not compel a jury to find that a label is

---

7. The *Ferebee* court based its finding on two alternative rationales: 1) compliance with both federal and state law cannot be said to be impossible because the defendant can petition the EPA to allow the label to be more comprehensive; and 2) state common law damages would not serve as an obstacle to the accomplishment of FIFRA's purpose. "Such a conflict would

exist only if FIFRA were viewed not as a regulatory statute aimed at protecting citizens from the hazards of modern pesticides, but rather as an affirmative subsidization of the pesticide industry that commanded states to accept the use of EPA–approved pesticides." *Riden, supra,* 763 F.Supp. at 1506, n. 12, *quoting, Ferebee,* 736 F.2d at 1542–43.

also adequate for *purposes of state tort law as well.* The purposes of FIFRA and state tort law may be quite distinct." 736 F.2d at 1540 (emphasis in original). FIFRA attempts to ensure, based on a cost-benefit analysis that [the product], as labeled, does not "generally cause unreasonable adverse effects on the environment." 7 U.S.C. § 136a(c)(5)(D). "State tort law, in contrast, may have broader compensatory goals; conceivably, a label may be inadequate under state law if that label, while sufficient under a cost-benefit standard, nonetheless fails to warn against any significant risk."

*Roberts, supra,* 702 F.Supp. at 199, *quoting, Ferebee,* 736 F.2d at 1540.

Furthermore, the court rejects defendants' contention that a state court jury verdict would have the effect of "regulating" the content of a warning label. *See, Kennan, supra,* 717 F.Supp. at 806-07. A manufacturer is not "compelled" to alter a product label in response to a jury award in the same way that it is "compelled" to comply with a state law or regulation. *Riden, supra,* 763 F.Supp. at 1507. For instance, where a manufacturer is faced with an isolated jury verdict, it may dismiss the action as an aberration, pay the judgment and choose not to alter the label. *Id.* In addition, a manufacturer may petition the EPA for a change in the content of their labels. *Roberts, supra,* 702 F.Supp. at 198.[8]

FIFRA's labeling scheme was created to help minimize the risks associated with pesticide use by requiring all pesticide labels to contain certain essential information. *Riden, supra,* 763 F.Supp. at 1509. Accordingly, when an individual is injured

while using an EPA-approved pesticide, the adequacy of the pesticide's label is necessarily called into question. *Id.* at 1508. Resolution of such a question presents a factual issue for the jury to determine.

Consequently, for the reasons set forth herein, the court concludes defendants' motion for summary judgment asserting federal preemption of plaintiffs' failure to warn claims be, and the same hereby is, DENIED.

### B. *Statute of Limitations*

■ Plaintiffs' property damage claims are governed by Montana's two-year statute of limitations found at Mont.Code Ann. § 27-2-207. The Magistrate Judge, in holding plaintiffs' claims time-barred, concluded plaintiffs, as early as 1969, were aware of penta's dangerous propensities and the resultant contamination of the treating site.

That knowledge [of penta contamination in 1969], coupled with the actions by the State of Montana in contacting the plaintiffs about oily seep along Silver Bow Creek, and the State's agents telling the plaintiffs on February 16, 1983, that they must undertake cleanup is sufficient notice to plaintiffs that (1) contamination existed, and (2) that the chief contaminant was penta.

Accordingly, the Magistrate Judge held plaintiffs' property damage claims accrued prior to November 15, 1984 (two years before the filing of the present action), making plaintiffs' complaint untimely.

Plaintiffs assert the statutory period commenced on June 13, 1985, when the EPA took over the treating site and in-

---

**8.** The *Ferebee* court explained:

Maryland can be conceived of as having decided that, if it must abide by EPA's determination that a label is adequate, Maryland will nonetheless require manufacturers to bear the risk of any injuries that could have been prevented had Maryland been allowed to require a more detailed label or had Chevron persuaded EPA that a more comprehensive label was needed. The verdict itself [compensating Ferebee for injuries] does not command Chevron to alter its label—the verdict merely tells Chevron that, if it chooses to continue selling

paraquat in Maryland, it may have to compensate for some of the resulting injuries. That may in some sense impose a burden on the sale of paraquat in Maryland, but it is not the equivalent to a direct regulatory command that Chevron change its label. Chevron can comply with both federal and state law by continuing to use the EPA–approved label and by simultaneously paying damages to successful plaintiffs such as Mr. Ferebee.

*Roberts, supra,* 702 F.Supp. at 198, n. 5, *quoting, Ferebee,* 736 F.2d at 1541.

formed plaintiffs of their potential liability for cleanup costs. Plaintiffs contend that prior to that point in time, they had not suffered any compensable injury because they retained the full use and enjoyment of their property.

■ The time at which a right of action in tort accrues is not defined by Montana statute. Nevertheless, this court, in applying Montana law, has held that a right of action in tort accrues upon injury. *See, Buhl v. Biosearch Medical Products,* 635 F.Supp. 956, 959 (D.Mont.1985); *Much v. Sturm, Ruger & Co., Inc.,* 502 F.Supp. 743, 744 (D.Mont.1980), *aff'd.* 685 F.2d 444 (9th Cir.1982). Furthermore, the fact that a party with a cause of action has no knowledge of his rights, or even the facts out of which the cause arises, does not delay the running of the statute of limitations. *Bennett v. Dow Chemical Co.,* 220 Mont. 117, 713 P.2d 992, 994–95 (1986) (cause of action accrues from the date of discovery of the facts which would give rise to a cause of action). *See also, Major v. North Valley Hospital,* 233 Mont. 25, 759 P.2d 153 (1988). Consequently, the critical determination as to when a cause of action accrues is knowledge of the facts essential to the cause of action. *See, Burgett v. Flaherty,* 204 Mont. 169, 663 P.2d 332, 334 (1983). The issue of when a particular plaintiff's cause of action in tort accrued is ordinarily a question of fact for the jury to determine with the defendant bearing the burden to prove this affirmative defense. *See, Thompson v. Nebraska Mobile Homes Corp.,* 198 Mont. 461, 647 P.2d 334 (1982); *see also, Hill v. Squibb & Sons, E.R.,* 181 Mont. 199, 592 P.2d 1383 (1979).

In the case *sub judice,* the court concludes no material factual issues exist as to when plaintiffs' cause of action accrued. The record is replete with evidence that plaintiffs knew, prior to November 15, 1984, that the waste penta had caused environmental damage to the treating site. Consequently, plaintiffs' property damages claims accrued prior to November 15, 1984, and, as a result, plaintiffs are precluded from pursuing said claims since they failed to commence the present action within the two year period of limitations prescribed by Mont.Code Ann. § 27–2–207. Plaintiffs' failure to understand the causal relationship between their injury and the defendants' alleged wrongful acts will not resuscitate a claim on which the statute of limitations has run. *See, E.W. v. D.C.H.,* 231 Mont. 481, 754 P.2d 817, 820 (1988).

■ Plaintiffs may not avoid application of § 27–2–207 MCA by asserting the EPA's seizure of the treating site on June 13, 1985, was the injury-producing event upon which their claims are based. Contrary to plaintiffs' assertion, the complete loss of the use and enjoyment of the property is not a prerequisite for stating a viable property damage claim. *See, Spackman v. Ralph M. Parsons Company,* 147 Mont. 500, 414 P.2d 918 (1966) (plaintiffs entitled to recover damages for flooded basement even though basement was only flooded for two days and absent any evidence that plaintiff lacked the "full use and enjoyment" of the property).

Plaintiffs knew, prior to November 15, 1984, their property had been contaminated by the discharge of waste penta. They also realized that the contamination would continue until the soil and groundwater were cleaned up. The mere fact the extent of plaintiffs' ultimate damages were unknown is irrelevant. "[I]t is not necessary to know the total extent of damages that an act causes to begin the running of the statute of limitations." *E.W. v. D.C.H., supra,* 754 P.2d at 820, *quoting, Raymond v. Ingram,* 47 Wash.App. 781, 737 P.2d 314, 317 (1987).

"Few are the injuries that could not someday develop additional consequences. To adopt the theory advocated by EW would again postpone the statutory period indefinitely.

Section 27–1–203, MCA, provides that "damages may be awarded ... for detriment ... certain to result in the future." In *Frisnegger v. Gibson* (1979), 183 Mont. 57, 598 P.2d 574, we construed § 27–1–203 consistent with the Montana practice of instructing juries that damages need only be reasonably certain.

183 Mont. at 71, 598 P.2d at 582. Under the *Frisnegger* rationale, EW could have presented evidence of, and received damages for, future harm, if any.

*E.W. v. D.C.H., supra,* 754 P.2d at 820–21.

 The plaintiffs next suggest the period of limitations should be tolled. Plaintiffs stress the continuing nature of the contamination warrants tolling the statutory period until the point in time the damage to their property stabilized. Plaintiffs predicate their position on the "discovery doctrine", as well as the concepts of "continuing injury", "continuing tort" and "continuing nuisance." *See, Gravely Ranch v. Scherping,* 240 Mont. 20, 782 P.2d 371 (1989); *Blasdel v. Montana Power Co.,* 196 Mont. 417, 640 P.2d 889 (1982); and *Shors v. Branch,* 221 Mont. 390, 720 P.2d 239 (1986).

The "discovery doctrine" has been judicially applied to toll the statute of limitations in cases where, in light of the nature of the injury or the party's relationship, it is virtually impossible for the plaintiff to realize he has a cause of action. *See, Johnson v. St. Patrick's Hospital,* 148 Mont. 125, 417 P.2d 469 (1966); *Keneco & Kenik v. Cantrell,* 174 Mont. 130, 568 P.2d 1225 (1977). The "discovery doctrine" has most often been applied in cases involving latent injuries. *See, Monroe v. Harper,* 164 Mont. 23, 518 P.2d 788 (1974); *Hornung v. Richardson–Marrill, Inc.,* 317 F.Supp. 183 (D.Mont.1970).

The "discovery doctrine" may not, however, be utilized to toll the statute of limitations until a plaintiff discovers his legal right to bring an action for known injuries. *Bennett v. Dow Chemical Co., supra,* 713 P.2d at 995. As stated previously, plaintiffs knew, prior to November 15, 1984, that their property had been damaged by the defendants' product. Consequently, plaintiffs may not rely on the "discovery doctrine" to toll the statute of limitations upon their claims until the damages to their property "stabilized."

 Finally, plaintiffs have failed to present a persuasive argument for extending the "continuing injury" and "continuing nuisance" rationale to toll the statute of limitations as to the products liability, negligence and warranty claims advanced in the instant action.[9] The decisions upon which plaintiffs rely, *Gravely Ranch, supra,* and *Blasdel, supra,* are distinguishable from the present action and, therefore, unpersuasive.

In *Gravely Ranch,* the Montana Supreme Court held the presence of lead acid batteries on an adjoining landowner's property was a continuous nuisance that tolled the statute of limitations period applicable to plaintiff's claims seeking damages for the loss of his cattle due to lead poisoning. Specifically, the court held the statute of limitations would not begin to run until the nuisance was abated. Furthermore, once the nuisance was removed, the statute of limitations would bar any actions commenced more than two years after the abatement of the nuisance, or discovery of the cause of injury, whichever occurred later. 782 P.2d at 375.

In *Blasdel,* plaintiffs sued for damages to their real property resulting from the rising water table caused by the construction and operation of Kerr Dam. The court held plaintiffs' claims were not barred by the statute of limitations, despite the fact their complaint was filed in 1960, approximately nineteen years after the damage first occurred. The court held plaintiffs' cause of action accrued in 1960, when their damages stabilized and became permanent. 640 P.2d at 894.

In the case *sub judice,* plaintiffs' claims sound in negligence, products liability and

---

9. The court is also unpersuaded by plaintiffs' "continuing tort" argument premised on *Shors v. Branch,* 221 Mont. 390, 720 P.2d 239 (1986). In *Shors,* the court held the presence of a gate blocking access to a river constituted a continuing tort and, as a result, plaintiffs had a cause of action each day the gate obstructed the free use of their easement and could recover damages for the two years preceding filing of their complaint. In the present action, however, defendants' relationship with the plaintiffs ended more than two years prior to the filing of this action and, as a result, there is no on-going conduct of the defendants that can be abated to end a continuous tort.

breach of warranty.[10] Plaintiffs have failed to present a cogent argument for extending the continuing nuisance principles discussed in *Gravely Ranch* and *Blasdel* to the present action. Accordingly, the court concludes defendants have made the requisite showing, based upon the facts and evidence of record, to establish their entitlement to summary judgment, under Fed.R.Civ.P. 56, on the statute of limitations issue. In this court's opinion, no reasonable jury could find plaintiffs were not on notice, well before November 15, 1984, that their property was contaminated and that a causal relationship existed between the defendants' penta and that damage. Consequently, the court concludes defendants' motion is well taken.[11]

### C. *Torger Oaas' Individual Claim*

Torger Oaas asserts material factual issues preclude entry of summary judgment with respect to his individual claim for emotional injury. The court is unconvinced, however, that Oaas has sufficiently established the existence of the factual predicate essential to a claim for emotional injury.

■ Although Montana has not yet recognized the tort of intentional infliction of emotional distress, the Montana Supreme Court has indicated that "where [defendant's] conduct has been so outrageous, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community ..." that it may allow recovery for the same. *Day v. Montana Power Company*, 242 Mont. 195, 789 P.2d 1224, 1226 (1990), *quoting, Frigon v. Morrison–Maierle, Inc.*, 233 Mont. 113, 123, 760 P.2d 57, 63–64 (1988), (quoting Restatement (Second) of Torts § 46, Comment d (1965)).[12] It is a question of law whether a plaintiff has introduced sufficient evidence to support a prima facie case for intentional infliction of emotional distress. *Doohan v. Bigfork School District No. 38*, 247 Mont. 125, 805 P.2d 1354, 1365 (1991), *citing, Philip R. Morrow, Inc. v. FBS Ins. Montana–Hoiness Labor, Inc.*, 236 Mont. 394, 403, 770 P.2d 859, 864 (1989).

■ In the case *sub judice*, Oaas has failed to establish the conduct of the defendants in marketing penta met the threshold level of "outrageousness" contemplated by the *Day* decision. As a result, Oaas is unable to establish the factual predicate

---

**10.** Plaintiffs' nuisance claim fails as a matter of law. The Magistrate Judge recommended plaintiffs' nuisance claim be dismissed, given the fact that the defendants, as suppliers of penta, lacked any ownership interest in the treating facility, nor did they possess any right or ability to remedy the nuisance creating activity thereon. *See, Edward Hines Lumber Co. v. Vulcan Materials Co.*, 861 F.2d 155 (7th Cir.1988). *See also, City of Manchester v. National Gypsum Co.*, 637 F.Supp. 646 (D.R.I.1986); *Town of Hooksett School District v. W.R. Grace & Co.*, 617 F.Supp. 126 (D.N.H.1984) (nuisance claim may not be maintained against defendants who merely manufacture a product which, subsequent to its sale, allegedly causes damage to property). Plaintiffs have failed to present any argument in opposition to the Magistrate Judge's recommendation.

**11.** The party moving for summary judgment, pursuant to Fed.R.Civ.P. 56, bears the initial burden of proving that no genuine issue of material fact exists. *See, e.g., Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *California Pacific Bank v. Small Business Administration*, 557 F.2d 218, 220 (9th Cir.1977). In meeting that burden, the moving party may rely on the pleadings, depositions, answers to interrogatories,

and admissions on file, together with affidavits, if any, to show there is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Once the moving party's burden is met, the burden of proof shifts to the opposing party to demonstrate the existence of a genuine issue of fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Turner v. International Brotherhood of Teamsters*, 604 F.2d 1219, 1228 (9th Cir.1979). The party opposing a motion for summary judgment "may not rest upon the mere allegations ... of his pleading," but must, by affidavit or otherwise, "set forth specific facts showing that there is a genuine issue for trial." *Turner v. International Brotherhood of Teamsters, supra*, 604 F.2d at 1228. The issue must be one raising a factual dispute that will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

**12.** The Montana Supreme Court has also narrowly construed the tort of negligent infliction of emotional distress. *Day, supra,* 789 P.2d at 1226, *citing, Versland v. Caron Transport,* 206 Mont. 313, 322–23, 671 P.2d 583, 588 (1983).

required under Montana law to sustain a claim for intentional infliction of emotional distress. *See, Doohan,* 805 P.2d at 1365. More importantly, Oaas has failed to present any basis upon which to impose liability on the named defendants for his alleged emotional injury.

The Montana Supreme Court has permitted plaintiffs to recover for their emotional distress as an element of damages [13] in actions for: (1) private nuisance (*French v. Ralph E. Moore, Inc.* (1983), 203 Mont. 327, 661 P.2d 844); (2) violation of certain constitutional rights (*Stensvad v. Towe* (1988), 232 Mont. 378, 759 P.2d 138); and (3) breach of the covenant of good faith and fair dealing (*Gibson v. Western Fire Ins. Co.* (1984), 210 Mont. 267, 682 P.2d 725; *Dunfee v. Baskin–Robbins, Inc.* (1986), 221 Mont. 447, 720 P.2d 1148; *Safeco Ins. Co. v. Ellinghouse* (1986), 223 Mont. 239, 725 P.2d 217). *Day, supra,* 789 P.2d at 1227. The court has declined, however, to extend recovery for emotional distress damages to cases where a defendant negligently damages or destroys real property and the plaintiff suffers no physical injury. *Id.*

Oaas has failed to present a legal basis upon which to base an award of damages for his purported emotional distress. Furthermore, Oaas has failed to establish the defendants' conduct resulted "in a *substantial* invasion of a legally protected interest" causing "a *significant* impact upon the person of the plaintiff," *Johnson v. Supersave Markets, Inc.,* 211 Mont. 465, 686 P.2d 209 (1984) (emphasis in original); the factual predicate required under Montana law to sustain a claim for emotional distress damages. *See, First Bank (N.A.)—Billings v. Russell Clark,* 236 Mont. 195, 771 P.2d 84, 91 (1989); *Johnson, supra.* Consequently, the court concludes defendants' summary judgment motion is well taken as to Torger Oaas' individual claim.

**13.** "Emotional distress under Montana law has been and remains primarily an element of damages rather than a distinct cause of action." *Day, supra,* 789 P.2d at 1226, *quoting, Frigon,* 760 P.2d at 63.

**14.** 42 U.S.C. § 9607(a) provides that, subject to certain defenses and exception, liability for the

## D. *Indemnity*

Any party potentially liable for the costs of cleaning up hazardous substances may seek contribution from other potentially responsible entities, pursuant to Section 113(f)(1) of CERCLA, 42 U.S.C. § 9613(f)(1).

> Any person may seek contribution from *any other person who is liable or potentially liable under section 107(a) [42 U.S.C. § 9607(a)].* . . . In resolving contribution claims, the court may allocate response [*i.e.,* cleanup] costs among liable parties using such equitable factors as the court determines are appropriate. Nothing in this subsection shall diminish the right of any person to bring an action for contribution in the absence of a civil action under section 106 or 107 [42 U.S.C. § 9606 or 9607].

42 U.S.C. § 9613(f)(1) (emphasis added).

In the case *sub judice,* the Magistrate Judge noted the owners and operators of the Montana Pole facility, and not the named defendants, were responsible for disposing of the penta waste generated by the treating process. As a result, the Magistrate Judge concluded plaintiffs had failed to establish the defendants were "liable or potentially liable," under 42 U.S.C. § 9607(a),[14] for the cleanup costs and, therefore, plaintiffs' indemnity claims failed as a matter of law. Plaintiffs have not raised any objections to the Magistrate Judge's recommended decision. Accordingly, the court concludes defendants' motion for summary judgment is well taken with respect to plaintiffs' indemnity claims.

## CONCLUSION

For the reasons set forth herein, the court, after conducting a *de novo* review of the record, holds as follows:

costs of cleaning up hazardous substances may be imposed upon "any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of." *Edward Hines Lumber Co. v. Vulcan Materials Co.,* 861 F.2d 155, 156 (7th Cir.1988).

(1) the motion for summary judgment on behalf of defendants Reichhold Chemicals, Inc. and The Dow Chemical Company asserting plaintiffs' "failure to warn" claims are preempted by the Federal Insecticide, Fungicide, and Rodenticide Act, 7 U.S.C. §§ 136 *et seq.* is hereby DENIED;

(2) defendants' motions for summary judgment are hereby GRANTED as to:

(a) Plaintiffs' property damage claims, *i.e.,* Counts I–IV of plaintiffs amended complaint; and

(b) Plaintiffs' claims for indemnity, nuisance, breach of express and implied warranties, as well as Torger Oaas' emotional injury claim.

IT IS SO ORDERED.